**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**JUN 23 2004**

**PATRICK FISHER**
**Clerk**

**PUBLISH**

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

---

UNITED STATES OF AMERICA,

      Plaintiff-Appellee,

v.

JASON ROBERT LOPEZ,

      Defendant-Appellant.

No. 02-1142

---

**Appeal from the United States District Court**
**for the District of Colorado**
**(D.C. No. 99-CR-362-WM)**

---

Robert M. Russel, Assistant United States Attorney (John W. Suthers, United States Attorney, with him on the brief) Denver, Colorado, for Plaintiff-Appellee.

Darcy M. Goddard (Amy L. Padden with her on the briefs), of Wheeler Trigg & Kennedy, P.C., Denver, Colorado, for Defendant-Appellant.

---

Before **TACHA**, Chief Circuit Judge, **BRORBY**, Senior Circuit Judge, and **O'BRIEN**, Circuit Judge.

---

**O'BRIEN**, Circuit Judge.

      Jason Robert Lopez was convicted by a jury on March 15, 2000, of being a

felon in possession of two firearms in violation of 18 U.S.C. § 922(g). In July 2000, he filed a motion for a new trial, claiming the Government failed to disclose exculpatory impeachment evidence as required by *Brady v. Maryland*, 373 U.S. 83 (1963), *United States v. Bagley*, 473 U.S. 667 (1985), *Giglio v. United States*, 405 U.S. 150 (1972), and their progeny. The district court held several hearings and ultimately denied the motion. Lopez was sentenced to eighty-four months in prison. He appeals from the denial of his motion for a new trial and claims the district court erroneously instructed the jury on the elements of constructive possession.[1] Exercising jurisdiction under 28 U.S.C. § 1291, we affirm.

## DISCUSSION

Four people and an infant child lived in a home in Colorado Springs, Colorado: Debra Ruiz, the legal renter; Gabriel Ruiz, her son; Alissa Gonzales, Gabriel's girlfriend; Tracy Batts, Alissa's mother; and Randi, Tracy's infant daughter. Lopez was a friend of Gabriel Ruiz's and occasionally spent the night at the home. On June 17, 1999, federal agents executed a search warrant at the

---

[1] Lopez also filed a request to hold this appeal in abeyance pending the Supreme Court's decision in *Massaro v. United States*, 538 U.S. 500 (2003), determining the appropriate vehicle for bringing a claim of ineffective assistance of counsel, a decision pending when he filed his appeal. We denied his request, but note *Massaro*, decided April 23, 2003, holds "an ineffective-assistance-of-counsel claim may be brought in a collateral proceeding under § 2255, whether or not the petitioner could have raised the claim on direct appeal." *Id*. at 504.

home and seized a substantial amount of stolen property, a number of firearms from various locations in the home and some ammunition. In particular, agents seized an SKS assault rifle and a Tec-9 handgun from the room where Lopez allegedly slept—the "nursery." Lopez, who was not present at the time of the search, was charged with illegal possession of the assault rifle and handgun.

## I. **Brady Violation**

Prior to trial, Lopez filed a *Brady/Giglio* motion requesting disclosure of "promises of leniency, plea bargains or rewards of any nature given to . . . witnesses . . . ." (R., Vol. I, Doc. 19 at 2.) The Government answered, specifically stating "no promises of leniency" were made to any witness. (R., Vol. I, Doc. 21 at 2.)

After trial, but prior to sentencing, it came to the attention of Lopez that the testimony of two of the Government's witnesses, Debra Ruiz and Alissa Gonzales, may have been motivated or influenced by promises and/or threats that were not disclosed to him in spite of his written request. On July 10, 2000, Lopez filed a motion for a new trial, specifically alleging both women had been threatened with prosecution unless they cooperated against him. Additionally, he claimed they both were promised that Gabriel Ruiz would receive lenient treatment if they

would testify against Lopez.[2]  A hearing was held on the motion on December 12, 2000.  The court asked for further briefing and took the matter under advisement. In November 2001, before a decision was rendered, Lopez expanded his new trial motion to include a claim that the Government had failed to disclose a written report containing exculpatory material.  On November 28 and December 6, 2001, hearings were held to explore that allegation.  On December 21, 2001, the court orally announced its decision denying the motion for a new trial.

## A.  Standard of Review

"If a new trial motion is based on an alleged *Brady* violation, we review the district court's decision de novo."  *United States v. Combs*, 267 F.3d 1167, 1172 (10th Cir. 2001).  In order to establish a *Brady* violation, Lopez "must demonstrate that '(1) the prosecution suppressed evidence; (2) the evidence was favorable to the accused; and (3) the evidence was material to the defense.'" *Scott v. Mullin*, 303 F.3d 1222, 1230 (10th Cir. 2002) (quoting *Banks v. Reynolds*, 54 F.3d 1508, 1516 (10th Cir. 1995)).  Because "the primary consideration under *Brady* is fairness[,]" we will reverse the district court only if the suppression of evidence denied the defendant a fair trail.  *Banks*, 54 F.3d at 1516 (citations omitted).

---

[2]  Gabriel was facing federal charges for illegal possession of two weapons—a Norinco found under his bed during the search and a handgun found in his car when he was arrested.

Lopez's *Brady* claim, however, is predicated on the district court's preliminary factual findings as to whether threats or promises were made. We review the district court's findings of fact for clear error. *United States v. Pearl*, 324 F.3d 1210, 1215 (10th Cir.), *cert. denied*, 539 U.S. 934 (2003). After considering the entire evidence, the reviewing court will determine a finding is "clearly erroneous" when "it is left with the definite and firm conviction that a mistake has been committed." *United States v. Colonna*, 360 F.3d 1169, 1175 (10th Cir.) (quoting *United States v. United States Gypsum Co.*, 333 U.S. 364, 395 (1948)), *petition for cert. filed* (April 12, 2004). "We cannot duplicate the factfinding role of the trial court and '[w]here there are two permissible views of the evidence, the factfinder's choice between them cannot be clearly erroneous.'" *Id.* (quoting *Anderson v. Bessemer City, N.C.,* 470 U.S. 564, 573 (1985)).

**B. Suppression of Evidence**

Lopez argues "the district court erred when it did not complete the analysis required under *Brady*, *Giglio*, and *Bagley* . . . ." (Appellant's Reply Br. at 10.) He contends that, had the district court conducted a full analysis, it would mandate reversal of Lopez's conviction and require a new trial. We disagree.

The district court's oral ruling denying the motion for a new trial was preceded with a summary of the extended proceedings and conflicting testimony before the court. It recognized Gonzales and Ruiz's testimony alleging the

investigating officers had threatened to arrest them unless they cooperated. It further noted Ruiz's attestation that she was told her testimony against Lopez may benefit her son in his case. However, these allegations were categorically denied by each of the investigating officers. As to the allegations that Gonzales and Ruiz were threatened with arrest, Detective Charles Yeater was the only investigator who recalled mentioning the subject. He stated that shortly after they began searching the premises, he told "Alissa Gonzales, Tracy Batts and Debbie Ruiz that all of them could be arrested because we were finding stolen property and drugs in about every room of the house . . . but I continued on to let them know that I really didn't think that Alissa or Debbie were actually involved in any of it as far as the stolen property." (R., Vol. 7 at 99.) Upon further questioning, Yeater conclusively stated he did not tell them their arrest was "contingent in any way upon their cooperation or refusal to cooperate." (*Id.*)

Lopez claims the district court made findings of fact when it noted "there's evidence that the threats were made" and "one could infer that a deal was struck with Gabriel Ruiz and that arguably this would show that he was being rewarded for the testimony of Alissa Gonzales and Debbie Ruiz." (R., Vol. 14 at 8.) A careful reading of the entire hearing transcript instead reveals these observations are a reflection of the court's oral consideration of conflicting evidence, not factual findings. It painstakingly weighed this evidence and determined Lopez

had failed to show by a preponderance of the evidence that there was any deal, and consequently, there was no *Brady* violation. Because there is abundant evidence in the record to support this conclusion, it is not clear error. Moreover, after finding Lopez failed to demonstrate the Government suppressed evidence, the trial court need go no further to effectively dispose of Lopez's *Brady* claim.[3]

## II. **Jury Instruction**

Lopez also complains the district court improperly instructed the jury regarding constructive possession. Jury Instruction No. 30, provided in relevant part:

> A person who, although not in actual possession, knowingly has both the power and the intention at a given time to exercise dominion or control over a thing, either directly or through another person or persons, is then in constructive possession of it.

(R., Vol. 6 at 333.) Lopez contends this instruction was incomplete and inaccurate because constructive possession is limited to circumstances when a person "knowingly has ownership, dominion, or control over the [contraband] *and* the premises where [it is] found." *United States v. Hager*, 969 F.2d 883, 888 (10th Cir.) (emphasis added), *cert. denied*, 506 U.S. 964 (1992), *abrogated on*

---

[3] Of more concern to the district court was Lopez's allegation, brought while the motion for new trial was pending, that the Government failed to provide a police report which stated a confidential informant had said Gabriel Ruiz also carried a Tec-9, the same type of gun that was the subject of Lopez's conviction. After some confusion, however, the parties agreed the information *was* disclosed to defense counsel prior to trial. Lopez does not appeal the district court's determination that this disclosure was sufficient under *Brady*.

*other grounds by Bailey v. United States*, 516 U.S. 137 (1995).  Lopez argues the district court erred by omitting from the instruction the words "and the premises where it is found."

Because he did not object to the language defining constructive possession—in fact, he requested it—we review for plain error.  Fed. R. Crim. P. 30(d) & 52(b); *United States v. Fabiano*, 169 F.3d 1299, 1302 (10th Cir. 1999); (R. Vol. I, Doc. 38).  But the standard of review matters not at all.  Under any standard, the omission was not error.

In *United States v. Culpepper*, we reaffirmed a twenty-year-old holding that a person has constructive possession of an item when he "knowingly hold[s] the power and ability to exercise dominion and control over it."  834 F.2d 879, 881 (10th Cir. 1987) (citing *United States v. Massey*, 687 F.2d 1348, 1354 (10th Cir. 1982); *United States v. Zink*, 612 F.2d 511, 516 (10th Cir. 1980); *Amaya v. United States*, 373 F.2d 197, 199 (10th Cir. 1967)).  We restated the "dominion and control over the item" rule in *United States v. Parrish* and added that, in some instances, "[e]xercising dominion and control over a residence where contraband is concealed may constitute constructive possession of the narcotics."[4]  925 F.2d

---

[4]  But care is required.  "In cases involving **joint** occupancy of a place where contraband is found, mere control or dominion over the place in which the contraband is found is not enough to establish constructive possession."  *United States v. McKissick,* 204 F.3d 1282, 1291 (10th Cir. 2000) (emphasis added) (internal quotations omitted).  Rather, "the government is required to present 'direct or circumstantial evidence to show

-8-

1293, 1296 (10th Cir. 1991), *abrogated on other grounds by United States v. Wacker*, 72 F.3d 1453 (10th Cir. 1996).

After *Parrish*, a panel of this circuit stated that "[g]enerally, a person has constructive possession of narcotics if he knowingly has ownership, dominion or control over the narcotics *and the premises where the narcotics are found.*" *Hager*, 969 F.2d at 888 (emphasis added). For this proposition, the *Hager* panel cited only *Parrish*. However, in suggesting a two-part test that lists in the conjunctive the requirements that a person have ownership, dominion or control over (1) the contraband and (2) the premises where it is found, *Hager* departed from both *Parrish* and the constructive possession standards of other circuits that use similar language but list the factors in the disjunctive.[5]

Since *Hager*, many of our cases have repeated this erroneous general statement, although none of them have been decided based on a conjunctive requirement of dominion over an item and the premises. *See, e.g., Colonna*, 360 F.3d at 1178-79; *United States v. Scull*, 321 F.3d 1270, 1284 (10th Cir.), *cert.*

---

some connection or nexus individually linking the defendant to the contraband.'" *Id.* (quoting *United States v. Valadez-Gallegos,* 162 F.3d 1256, 1262 (10th Cir. 1998)).

[5] *See also United States v. Blue*, 957 F.2d 106, 107 (4th Cir. 1992) (constructive possession when evidence shows "ownership, dominion, or control over the contraband itself *or* the premises or vehicle in which the contraband is concealed") (emphasis added) (internal quotations omitted); *United States v. McKnight*, 953 F.2d 898, 901 (5th Cir.) (same), *cert. denied*, 504 U.S. 989 (1992); *United States v. Wainwright*, 921 F.2d 833, 836 (8th Cir. 1990) (same).

*denied sub nom.,* 124 S. Ct. 175 (2003); *United States v. Lott*, 310 F.3d 1231, 1247 (10th Cir. 2002), *cert. denied*, 538 U.S. 936 and *cert. denied,* 538 U.S. 991 (2003); *United States v. Hishaw*, 235 F.3d 565, 571 (10th Cir. 2000), *cert. denied*, 533 U.S. 908 (2001).  However, in other recent cases, we have cited the *Culpepper* definition, finding constructive possession where the defendant has the power to exercise control and dominion over the item alone.  *See, e.g., United States v. Simpson*, 94 F.3d 1373, 1380 (10th Cir.), *cert. denied,* 519 U.S. 975 (1996)*; United States v. Sullivan*, 919 F.2d 1403, 1430 (10th Cir. 1990).  In any event, *Culpepper,* which pre-dates the confusion, is the law in this circuit;[6] therefore, constructive possession exists where the defendant has the power to exercise control or dominion over the item.  *Culpepper*, 834 F.2d at 881.  Control or dominion over the premises where the item is found is therefore a factor, *Parrish*, 925 F.2d at 1296, but not a requirement, for finding constructive possession of the item itself.  The district court's omission of the words "and the premises where it is found," whether intentional or accidental, was not error.

For the aforementioned reasons, we **AFFIRM** the district court's denial of a new trial.

---

[6] "We cannot overrule the judgment of another panel of this court.  We are bound by the precedent of prior panels absent en banc reconsideration or a superseding contrary decision by the Supreme Court." *In re Smith,* 10 F.3d 723, 724 (10th Cir. 1993) (per curiam) (citations omitted), *cert. denied*, 513 U.S. 807 (1994).