**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**SEP 29 2004**

**PATRICK FISHER**
**Clerk**

**PUBLISH**

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

---

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

v.

No. 03-1458

MIGUEL ANGEL MALDONADO-
RAMIRES,

Defendant-Appellant.

---

Appeal from the United States District Court
for the District of Colorado
(D.C. No. 03-CR-80-RB)

---

Stephen L. Laiche, Griff, Larson & Laiche, Grand Junction, Colorado, for
Defendant-Appellant.

James C. Murphy, Assistant United States Attorney (John W. Suthers, United
States Attorney, with him on the brief), Denver, Colorado, for Plaintiff-Appellee.

---

Before **SEYMOUR**, **HOLLOWAY**, and **MURPHY**, Circuit Judges.

---

**MURPHY**, Circuit Judge.

---

Miguel Maldonado-Ramires pleaded guilty to transporting illegal aliens within the United States in violation of 8 U.S.C. § 1324(a)(1)(A)(ii), (a)(1)(B)(i), (a)(1)(B)(ii), and (a)(1)(B)(iv). In arriving at a sentence under the United States Sentencing Guidelines ("U.S.S.G."), the district court increased Maldonado-Ramires' base offense level by two points pursuant to § 2L1.1(b)(5). In so doing, the district court concluded that Maldonado-Ramires' offense conduct had "recklessly creat[ed] a substantial risk of death or serious bodily injury to another person." U.S.S.G. § 2L1.1(b)(5). Maldonado-Ramires appeals, asserting the district court erred in concluding that his offense conduct was reckless within the meaning of § 2L1.1(b)(5). This court exercises jurisdiction pursuant to 28 U.S.C. § 1291 and 18 U.S.C. § 3742(a) and **affirms** the sentence imposed by the district court.

In February of 2003, Maldonado-Ramires was driving a minivan along a stretch of Interstate 70 in Colorado. In addition to Maldonado-Ramires, the van contained six illegal aliens. Maldonado-Ramires lost control of the minivan, causing it to roll over. One of the passengers was killed in the accident and several others were injured. At the time of the accident, one passenger was sitting in the front passenger seat and the remaining five passengers were lying on the floor of the minivan. The rear seats and seatbelts had been removed from the van and Maldonado-Ramires had directed the aliens to lie down on the floor of

the minivan to avoid detection. Although Maldonado-Ramires fled the scene of the accident, he was eventually apprehended and charged with transporting illegal aliens within the United States for the purpose of commercial advantage and private financial gain and thereby causing serious bodily injury, in violation of 8 U.S.C. § 1324(a)(1)(A)(ii), (a)(1)(B)(i), (a)(1)(B)(iii), (a)(1)(B)(iv). [Id. at 3-4] Maldonado-Ramires pleaded guilty to the charge.

The only contested matter at sentencing was the applicability of U.S.S.G. § 2L1.1(b)(5). Section 2L1.1(b)(5) directs the sentencing court to increase a defendant's offense level by two levels "[i]f the offense involved intentionally or recklessly creating a substantial risk of death or serious bodily injury to another person." Application note six to § 2L1.1 provides that "[r]eckless conduct to which the adjustment from subsection (b)(5) applies includes a wide variety of conduct (*e.g.*, transporting persons in the trunk or engine compartment of a motor vehicle, carrying substantially more passengers than the rated capacity of a motor vehicle or vessel, or harboring persons in a crowded, dangerous, or inhumane condition)." In concluding that Maldonado-Ramires' offense conduct fell within the ambit of § 2L1.1(b)(5), the district court relied on the fact that the rear seats and seatbelts had been removed from the van and on Maldonado-Ramires' mandate that the passengers remain on the floor of the van at all times. In this regard, the district court concluded as follows:

In the manner in which the defendant, not merely allowed, but instead directed, coerced and controlled the transportation of these hapless aliens, the defendant recklessly exposed them to exactly the risks which materialized, death and serious bodily injury, and deprived them of any means whatsoever of self-defense.

The dangers to these passengers, forced to ride in the manner and circumstances dictated solely by the defendant, are obvious, and are exacerbated beyond mere negligence or gross negligence as those terms are commonly defined.

By requiring these passengers to lie down in an inherently restricted area without the—without the benefit of any safety restraints or cautions, depriving them even of the opportunity to observe and to react as best they could accordingly, he exposed them to a substantial risk, and an unjustified risk of death and serious bodily injury, and in so doing transported them, in the words of the application note, in dangerous conditions.

This court reviews "the district court's interpretation of the Sentencing Guidelines de novo, and its factual findings for clear error, giving due deference to the district court's application of the Guidelines to the facts." *United States v. Jardine*, 364 F.3d 1200, 1206 (10th Cir. 2004). Maldonado-Ramires does not dispute the district court's factual findings, but instead argues that the facts found by the district court do not support an enhancement under § 2L1.1(b)(5).[1]

---

[1]On July 23, 2004, Maldonado-Ramires submitted a letter to the court pursuant to Fed. R. App. P. 28(J) asserting, without elaboration, that the Supreme Court's recent decision in *Blakely v. Washington*, 124 S. Ct. 2531 (2004) "directly pertain[s] to [the] arguments in his Amended Opening Brief." The Rule 28(j) letter was submitted seven weeks after the Supreme Court decided *Blakely* and four weeks after oral argument was held in this case. Contrary to Maldonado-Ramires' assertion, *Blakely* is not remotely relevant to the specific argument raised in his appellate brief. As noted above, Maldonado-Ramires did not challenge on appeal the district court's power to find those facts necessary to arrive at an appropriate sentence under the Sentencing Guidelines. Instead, he

-4-

According to Maldonado-Ramires, because he was not carrying more passengers

than the rated capacity of the van, the van was mechanically sound, and all

---

simply asserted that his conduct did not fit, as a matter of law, within the parameters of § 2L1.1(b)(5). Because *Blakely* is not relevant to the issue Maldonado-Ramires raised on appeal, and because Maldonado-Ramires did not ask to file a brief raising a proper *Blakely* challenge, we do not consider the matter further.

It must be noted, however, that even if this court were to construe Maldonado-Ramires' Rule 28(j) letter as raising a *Blakely* claim, that claim would fail. Because Maldonado-Ramires did not assert before the district court that his sentence must be based only on those facts set out in the indictment and/or his plea agreement, this court reviews only for plain error. *United States v. Badilla*, No. 03-2183, 2004 WL 19873000, at *4 n.2 (10th Cir. Sept.8, 2004). "This court will correct an error not raised before the district court only if: (1) there is an error; (2) that is plain; (3) that affects substantial rights; and (4) that seriously affects the fairness, integrity, or public reputation of the judicial proceedings." *Id.* Even assuming there was a *Blakely* error that was plain, Maldonado-Ramires cannot satisfy the fourth part of the plain error analysis. A review of the sentencing proceedings reveals that the factual predicates underlying the district court's application of § 2L1.1(b)(5) were uncontested. Maldonado-Ramires actually conceded that the van he was driving had been altered so that the rear seats and seat belts were removed. Rather than contesting this fact, he argued that he was not legally responsible because the van was already altered when he purchased it. *See supra* note 2. Maldonado-Ramires likewise conceded that he required the passengers to remain on the floor of the van in an attempt to avoid detection. He simply asserted this requirement was not a reckless act within the terms of § 2L1.1(b)(5). Accordingly, the facts necessary for the district court to decide upon the applicability of § 2L1.1(b)(5) were uncontested. Furthermore, Maldonado-Ramires stipulated that "sentencing in this case will be determined by application of the [S]entencing [G]uidelines" and that the district court was "free pursuant to [U.S.S.G.] §§ 6A1.3 and 6B1.4, to reach its own findings of facts and sentencing factors considering the parties' stipulations, the presentence investigation, and any other relevant information." This stipulation, coupled with the uncontested relevant factual background, convinces this court that even if the district court did commit a plain *Blakely* error, that error did not affect the fairness, integrity, or public reputation of the judicial proceedings.

passengers were in the cab of the van, a § 2L1.1(b)(5) enhancement is not appropriate. Maldonado-Ramires' arguments are unconvincing.

It must first be noted that application note six to § 2L1.1 makes clear that the "[reckless conduct to which the adjustment from subsection (b)(5) applies includes a wide variety of conduct." Thus, although Maldonado-Ramires is correct to assert that the § 2L1.1(b)(5) enhancement has most often been applied when the vehicle driven by the smuggler was carrying more passengers than the rated capacity of the vehicle, that surely does not foreclose the application of the enhancement in the face of other dangerous conditions. *See, e.g., United States v. Rodriguez-Lopez*, 363 F.3d 1134, 1137-38 (11th Cir. 2004) (holding that § 2L1.1(b)(5) enhancement appropriate based on lack of sufficient number of life jackets on boat and noting that such a rule is consistent with cases applying the "enhancement to alien smugglers who transport aliens on roadways without sufficient seats or seatbelts"); *United States v. Cuyler*, 298 F.3d 387, 391 (5th Cir. 2002) (holding that § 2L1.1(b)(5) enhancement was appropriate where illegal aliens were transported lying down in the bed of a pickup truck, despite fact that it was legal in Texas for adults to travel unrestrained in such a manner); *United States v. Hernandez-Guardado*, 228 F.3d 1017, 1027-28 (9th Cir. 2000) (holding that § 2L1.1(b)(5) enhancement appropriate where overcrowding of vans appeared minimal but "passengers were not strapped into seats with seatbelts but were

instead lying unrestrained on floorboards and across the seats"). Upon consideration of the authorities cited by the parties, this court concludes that the district court did not err in concluding Maldonado-Ramires' offense conduct fell within the ambit of § 2L1.1(b)(5) when Maldonado-Ramires transported the illegal aliens in a minivan altered to remove the rear seats and seatbelts,[2] Maldonado-Ramires was the only driver on a lengthy trip from Arizona to Florida, and Maldonado-Ramires mandated that the passengers always remain prone on the floor of the van, leaving them completely unable to react to any dangerous driving conditions that might arise during the trip.

The sentence entered by the United States District Court for the District of Colorado is hereby **AFFIRMED**.

---

[2]Although Maldonado-Ramires makes much of the fact that he did not personally alter the minivan by removing the rear seats and seatbelts, but instead acquired the minivan in such an altered state, this court finds that fact legally irrelevant. The applicable Guideline provision makes clear that the appropriate focus is on the offense conduct. U.S.S.G. § 2L1.1(b)(5) ("*If the offense* involved intentionally or recklessly creating a substantial risk of death or serious bodily injury to another person, increase by **2** levels." (emphasis added)). Here, the offense is the transportation of illegal aliens within the United States for commercial gain. 8 U.S.C. § 1324(a)(1)(A)(ii), (a)(1)(B)(i). Without regard to whether Maldonado-Ramires personally made the modifications to the minivan in this case, he chose to utilize such a van, thereby contributing to the dangerous conditions under which the aliens in this case were transported. Under the approach advocated by Maldonado-Ramires, any person violating § 1324 could insulate themselves from the application of § 2L1.1(b)(5) simply by buying an altered minivan, rather than personally making the alterations. Such a result is nonsensical.