**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**DEC 2 2004**

**PATRICK FISHER**
**Clerk**

PUBLISH

UNITED STATES COURT OF APPEALS

TENTH CIRCUIT

---

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

v.

No. 03-2091

VICTOR LINDSEY,

Defendant-Appellant.

---

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO
(D.C. No. CR-01-588-JC)

---

Submitted on the Briefs:[*]

David C. Iglesias, United States Attorney, and Terri J. Abernathy, Assistant United States Attorney, Las Cruces, New Mexico, for Plaintiff-Appellee.

Victor Lindsey, Terre Haute, Indiana, Pro Se.

---

Before **EBEL**, **BALDOCK**, and **HARTZ**, Circuit Judges.

---

**BALDOCK**, Circuit Judge.

---

  [*] After examining the briefs and appellate record, this panel has determined unanimously that oral argument would not materially assist the determination of this appeal.  See Fed. R. App. P. 34(a)(2)(C); 10th Cir. R. 34.1(G).  The case is therefore ordered submitted without oral argument.

A jury convicted Defendant Victor Lindsey of various drug and firearm offenses including carrying a firearm during and in relation to a drug trafficking crime, and conspiracy to commit the same, in violation of 18 U.S.C. § 924(c)(1)(A)(i), (o); and being a felon in possession of a firearm, in violation of 18 U.S.C. § 922(g)(1). The district court sentenced Defendant to 180 months imprisonment. Defendant appeals. On appeal, Defendant raises three issues.[1] First, Defendant asserts the district court violated his right to be free from double jeopardy when the court empaneled a second jury after dismissing the original jury. Second, Defendant asserts he is not a "convicted felon" as required to sustain his § 922(g)(1) conviction. Third, Defendant asserts the evidence at

---

[1] Pursuant to Fed. R. App. P. 28(j), Defendant has filed a "Citation of Supplemental Authorities" belatedly challenging his criminal sentence in light of Blakely v. Washington, 124 S. Ct. 2531 (2004). Specifically, Defendant asserts the district court's two point obstruction enhancement to his base offense level under U.S.S.G. § 3C1.1 violated his Sixth Amendment right to trial by jury. We have previously expressed doubt as to whether a defendant could raise a Blakely claim in a Rule 28(j) letter. See United States v. Maldonado-Ramires, 384 F.3d 1228, 1230 n.1 (10th Cir. 2004) ("It must be noted, however, that even if this court were to construe [defendant's] Rule 28(j) letter as raising a Blakely claim, that claim would fail. Because [defendant] did not assert before the district court that his sentence must be based only on those facts set out in the indictment and/or his plea agreement, this court reviews only for plain error."). We have also previously refused to consider an issue asserted for the first time in a Rule 28(j) letter. See United States v. Kimler, 335 F.3d 1132, 1138 n.6 (10th Cir. 2003). Defendant filed neither a Motion for Post-Submission Consideration nor did he seek permission to file a brief properly raising the Blakely issue. See United States v. Badilla, 383 F.3d 1137, 1143 n.2 (10th Cir. 2004) (reviewing Blakely claim raised in Motion for Post-Submission Consideration for plain error); Maldonado-Ramires, 384 F.3d at 1230 n.1 ("[B]ecause [defendant] did not ask to file a brief raising a proper Blakely challenge, we do not consider the matter further."). Accordingly, we decline to consider it here.

trial failed to establish he "carried" a firearm as required under § 924(c)(1)(A)(i), (o).[2]

We exercise jurisdiction under 28 U.S.C. § 1291, and affirm. We recite the relevant

facts and governing law only as necessary to our discussion of the issues raised.[3]

## I.

We first address Defendant's challenge to his convictions under the Fifth

Amendment's Double Jeopardy Clause. U.S. Const. amend. V. The facts relevant

to this issue are that on May 6, 2002, the district court selected a jury for Defendant's

trial, set to begin on May 20. The court, however, never swore the jury. Rather, the

---

[2] The jury also convicted Defendant of the following drug offenses:
(1) possession with intent to distribute less than 50 kilograms of marijuana, in
violation of 21 U.S.C. § 841(b)(1)(D); (2) conspiracy to commit the same, in violation
of 18 U.S.C. § 846; (3) possession with intent to distribute more than 5 grams of a
substance containing cocaine base, in violation of 21 U.S.C. § 841(b)(1)(B); and
(4) possession with intent to distribute less than 500 grams of a substance containing
cocaine, in violation of 18 U.S.C. § 841(b)(1)(C). Aside from his double jeopardy
argument, Defendant does not challenge these convictions on appeal.

[3] Appointed appellate counsel filed an Anders brief suggesting Defendant's
appeal is frivolous. See Anders v. California, 386 U.S. 738 (1967). In response,
Defendant filed a motion to waive appellate counsel and proceed pro se. We allowed
Defendant's motion and counsel withdrew. In the Anders brief, appellate counsel
included an ineffective assistance of trial counsel argument out of an abundance
of caution in order to preserve the issue for collateral review. As we explained in
United States v. Galloway, 56 F.3d 1239, 1240 (10th Cir. 1995) (en banc): "[Ineffective
assistance of counsel] claims brought on direct appeal are presumptively dismissible,
and virtually all will be dismissed. The reasons for this rule are self-evident. . . . A
factual record must be developed in and addressed by the district court in the first
instance for effective review." (internal citations and footnote omitted). Here,
Defendant's appellate counsel has not even pointed to specific errors that trial counsel
made, so no way exists for us to review the ineffective assistance of counsel claim.

3

court indicated it would do so on the morning of trial. In the meantime, defense counsel filed a notice of conflict of interest based on his prior interaction with a government witness. Following a hearing, the court found counsel had a conflict of interest and could not provide Defendant "effective assistance of counsel." The court ordered new counsel appointed, discharged the jury, and vacated the trial setting. At a pretrial conference on August 8, 2002, Defendant's new counsel asked the court to try the case before the jury selected on May 6. The court denied counsel's request. On August 19, a second jury was selected, empaneled and sworn. Trial commenced the same day.

In a jury trial, jeopardy attaches at the earliest when the jury is empaneled and sworn. Crist v. Bretz, 437 U.S. 28, 35 (1978); United States v. Raymer, 941 F.2d 1031, 1038 (10th Cir. 1991). In the district court, Defendant acknowledged the court had not sworn the jury selected on May 6, but urged the court to make exception to the general rule: "The danger is that the government can select the prospective jury, go back to the office and decide that, in retrospect, one or more jurors caused it to have 'fear that the jury was likely to acquit the accused.'" Because the court, not the prosecution, decides when the jury is sworn, Defendant's concern is more theoretical than real.

Normally, jury selection directly precedes trial. Once the jury is selected, the district court promptly swears the jury, jeopardy attaches, and trial begins. Circumstances in this case, however, justified the court's delay in swearing the jury. Defendant's trial occurred in Las Cruces, New Mexico. At the time of the proceedings, Las Cruces had

4

no resident district judge and a bulging criminal docket. Federal judges from the District

of New Mexico traveled to Las Cruces on a rotating basis. Still other Federal Judges

traveled from outside the district to assist. One judge might select a jury, a second might

try the case, and a third might impose sentence. See United States v. Torres-Palma, 290

F.3d 1244, 1245 (10th Cir. 2002). In the interest of efficiency, the presiding judge

on May 6 selected juries for three upcoming criminal trials, including Defendant's,

but swore none of the juries. Under these circumstances, the district court's failure

to promptly swear the jury selected on May 6 for Defendant's May 20 trial is

understandable. Because the jury was not sworn, jeopardy did not attach.

Defendant's first claim of error thus fails.[4]

## II.

Defendant's challenge to his status as a convicted felon for purposes of 18 U.S.C.

§ 922(g)(1) similarly fails. Section 924(g)(1) provides "[i]t shall be unlawful for any

person . . . who has been convicted in any court of a crime punishable by imprisonment

for a term exceeding one year . . . to ship or transport in interstate . . . commerce, or

possess in or affecting commerce, any firearm or ammunition . . . ." A necessary

predicate to a § 922(g)(1) conviction is a prior felony conviction. A prior felony

---

[4] Because the court did not swear the initial jury, we need not address the question of whether "manifest necessity" resulting from prior defense counsel's conflict of interest required the selection of a second jury. See Arizona v. Washington, 434 U.S. 497, 505 (1978); United States v. Shinault, 147 F.3d 1266, 1275 (10th Cir. 1998).

conviction is not a predicate for a § 922(g)(1) offense, however, where the jurisdiction prosecuting the prior felony has restored a defendant's civil rights "unless such . . . restoration of civil rights expressly provides that the person may not ship, transport, [or] possess . . . firearms."  Id. § 921(a)(20).

At trial Defendant entered into a written stipulation that he previously had been "convicted of a crime punishable by a term of imprisonment exceeding one year" –carrying a concealed weapon in violation of Michigan state law–"within the meaning of § 922(g)(1)."  Despite that stipulation, Defendant now argues the State of Michigan restored his civil rights prior to his arrest on February 4, 2001.  Because Defendant failed to raise his argument in the district court, we review only for plain error. See Fed. R. Crim. P. 52(b).  Whether Michigan had restored Defendant's civil rights, including his right to possess firearms, at the time of his arrest for the § 922(g)(1) offense is a question of fact.  We have repeatedly held that "factual disputes not brought to the attention of the [district] court do not rise to the level of plain error."  United States v. Castorena-Jaime, 285 F.3d 916, 927 (10th Cir. 2002) (citing cases).  Based on the record before us, we cannot say the district court plainly erred under such circumstances.[5]

---

[5]  To establish Defendant did not have the right to transport or possess firearms in the State of Michigan at the time of his arrest, the Government has moved to supplement the record on appeal with the Petition and Order for Discharge From Probation, State v. Watson, No. 95-6671 (Mich. 3d Cir. Ct., September 2, 1998).  We allow the motion.

(continued...)

6

## III.

Lastly, Defendant challenges his convictions for carrying a firearm during and in relation to a drug trafficking crime and conspiracy to commit the same. 18 U.S.C. § 924(c)(1)(A)(i), (o). Prior to his arrest, Defendant was traveling as a passenger in a black Ford Explorer driven by Diana Randolph. The Explorer traveled in tandem with a U-Haul moving truck driven by Randy Watson. The Explorer passed through a border checkpoint immediately preceding the U-Haul. When border patrol checkpoint agents subsequently directed Watson and his U-Haul to secondary inspection, Watson drove away. Once apprehended, Watson indicated he was traveling with the Explorer. Agents pursued and stopped the Explorer. Inside the U-Haul, agents found three duffle bags containing thirteen handguns, several of which were loaded, additional rounds of ammunition, 47.7 grams of cocaine, 7.6 grams of "crack" cocaine, and 22 pounds of marijuana. Defendant argues the evidence was insufficient to establish he "carried" a firearm within the meaning of § 924(c)(1)(A). We review the sufficiency of the evidence de novo, viewing the evidence in a light most favorable to the Government. United States v. Nelson, 383 F.3d 1227, 1229 (10th Cir. 2004).

---

[5](...continued)
The discharge order indicates the Michigan state court discharged Defendant Lindsey from probation on September 2, 1998. Under Mich. Comp. Laws § 750.224f(1), Defendant could not possess a firearm for three years from that date, or until September 2, 2001. Lindsey committed the instant § 922(g)(1) offense on February 4, 2001. Thus, Defendant's argument also appears to fail as a matter of fact.

Section 924(c)(1)(A)(i) establishes a mandatory minimum five year sentence of imprisonment for "any person who, during and in relation to any crime of violence or drug trafficking crime . . . uses or carries a firearm . . . ." The "carry" prong of § 924(c)(1)(A) has two elements: (1) possession of the weapon through the exercise of dominion or control; and (2) transportation of the weapon. United States v. Durham, 139 F.3d 1325, 1335 (10th Cir. 1998). The Supreme Court has described § 924(c)'s basic purpose as an effort to combat the "dangerous combination" of "drugs and guns." Smith v. United States, 508 U.S. 223, 240 (1993). Consistent with that purpose, the Court in Muscarello v. United States, 524 U.S. 125, 126-27 (1998), held the phrase "carries a firearm" in § 924(c) is not limited to the carrying of firearms on the person, but "applies to a person who knowingly possesses and conveys firearms in a vehicle, including in the locked glove compartment or trunk of a car, which the person accompanies."

The evidence presented at trial included a pawn shop video surveillance tape showing Defendant and a straw purchaser buying firearms in Phoenix, Arizona. Defendant left the pawn shop carrying the firearms. The evidence also revealed that Defendant (1) directed Randolph to rent the U-Haul for him , (2) gave Randolph $800.00 to pay for the U-Haul, and (3) told Watson to drive the U-Haul while he and Randolph rode in the Explorer. Less than 48 hours after the firearms purchase, border patrol agents arrested Defendant while he was traveling in tandem with the U-Haul containing those

8

same firearms and illegal drugs. Defendant's fingerprint was also found on the wrapping of the crack cocaine seized from the U-Haul.

Randolph testified that Watson was Defendant's "flunky" who did "whatever Defendant told him to do." When the three stopped for gas outside Phoenix, Randolph saw Defendant get into the back of the U-Haul. A few hours later, the three stopped at a rest area because Watson wanted to rest. When Randolph asked Defendant why they had to stop with Watson, Defendant responded "he's not driving with my shit in there." The three continued driving together until Watson and Defendant passed through the border checkpoint. Randolph testified that while Watson was at the checkpoint, Defendant was "very nervous" and was saying to himself "come on, come on, got to make it through, come on."

The foregoing evidence sufficiently established both the possession and transportation elements of § 992(c)(1)(A)'s "carry" prong. The evidence showed Defendant had actual possession of the firearms in Phoenix at the time of purchase. The evidence further showed Defendant maintained constructive possession of the firearms while Watson transported them in the U-Haul because he exercised dominion and control over Watson and the U-Haul. Defendant, although not in actual possession of the firearms at the time of his arrest, had both the power and the intention at the relevant time to exercise dominion and control over the firearms, either directly or through Watson. See United States v. Lopez, 372 F.3d 1207, 1211 (10th Cir. 2004)

9

("A person who, although not in actual possession, knowingly has both the power and the intention at a given time to exercise dominion or control over a thing, either directly or through another person or persons, is then in constructive possession of it.").

The evidence also supports the inference that Defendant transported the firearms in the U-Haul, even though he was not physically present inside the vehicle. Defendant paid for the U-Haul, directed Watson to drive the U-Haul, and insisted the U-Haul travel in tandem with him at all times. Certainly, Defendant transported and conveyed firearms in a vehicle he was accompanying. See Muscarello, 524 U.S. at 126-127. "Accompany" is defined as "to go along with." Black's Law Dictionary 16 (7th ed. 1999). Defendant undoubtedly went "along with" the U-Haul as he and his cohorts traveled from Phoenix and into New Mexico. Accordingly, the evidence was sufficient to sustain Defendant's § 924(c)(1)(A) convictions.

AFFIRMED.