**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**June 13, 2006**

**Elisabeth A. Shumaker**
**Clerk of Court**

**PUBLISH**

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

---

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

**v.**

ISIDRO ARANDA-FLORES, aka
Chilo,

Defendant-Appellant.

No. 05-4140

---

**APPEAL FROM THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF UTAH**
**(D.C. No. 2:02-CR-397-1-DS)**

---

Sharon Preston, Attorney at Law, Salt Lake City, Utah, for Defendant-Appellant.

Karin M. Fojtik, Assistant United States Attorney (Paul M. Warner, United States
Attorney, with her on the brief), District of Utah, Salt Lake City, Utah, for
Plaintiff-Appellee.

---

Before **HENRY**, **BRISCOE**, and **O'BRIEN**, Circuit Judges.

---

**BRISCOE**, Circuit Judge.

---

After examining the briefs and appellate record, this panel has determined

unanimously that oral argument would not materially assist in the determination

of this appeal.  See Fed. R. App. P. 34(a)(2); 10th Cir. R. 34.1(G).  The case is, therefore, ordered submitted without oral argument.

Defendant Isidro Aranda-Flores pleaded guilty to transporting illegal aliens within the United States, in violation of 8 U.S.C. § 1324(a)(1)(A)(ii), (a)(1)(A)(v)(II), and (a)(1)(B)(iv), and was sentenced to a seventy-nine month term of imprisonment.  On appeal, Aranda-Flores contends that the district court erred in enhancing his sentence pursuant to U.S.S.G. § 2L1.1(b)(5).  We exercise jurisdiction pursuant to 28 U.S.C. § 1291, and remand the case to the district court with directions to vacate Aranda-Flores' sentence and resentence.

## I.

On June 16, 2002, at approximately 7:30 a.m., the Utah Highway Patrol and emergency medical personnel responded to an automobile accident on U.S. Highway 191 near Monticello, Utah.  Law enforcement officers determined that Aranda-Flores fell asleep at the wheel of his Ford Thunderbird, crossed the center of the two-lane highway, and collided with a Ford Mustang from the oncoming lane of traffic.  Travis Smith, the sole occupant of the Ford Mustang, was killed on impact.  Aranda-Flores and his four passengers were transported to area hospitals for medical treatment.  One of the passengers, Bernarda Gordillo, later died.  Aranda-Flores, along with the three surviving passengers, Juan Garnica-Gordillo, Jorge Garnica-Gordillo, and Isabel Becerra, were treated for their

injuries and eventually released to immigration authorities.[1]

Aranda-Flores' three surviving passengers admitted to authorities that they had made arrangements to be smuggled into the United States on June 10, 2002. The three survivors stated that after staying in Phoenix, Arizona, for a few days, Aranda-Flores picked them up and promised to take them to their final destination of Pennsylvania.[2] Aranda-Flores and his four passengers departed from Phoenix, Arizona, at approximately 11:00 p.m. the night before the accident. Aranda-Flores was the sole driver during the eight-and-a-half hour trip to Utah, and he stopped only once to get fuel. Aranda-Flores later confirmed that he traveled at night on a more remote highway to avoid detection by immigration authorities. He also submitted that his passengers were going to drive for some periods of the trip, had it progressed as planned. When questioned by authorities, Aranda-Flores did not remember falling asleep at the wheel.

Aranda-Flores entered a guilty plea pursuant to a plea agreement with the government. As part of that agreement, the government agreed to recommend that Aranda-Flores receive full credit for acceptance of responsibility. The

---

[1]     Aranda-Flores entered the United States illegally several months before the accident. He was twenty-one years old at the time of the accident.

[2]     The record contains conflicting accounts of how much money Aranda-Flores was to receive for taking the four passengers to Pennsylvania. Nonetheless, as part of the plea agreement, Aranda-Flores agreed that he would not argue for sentencing purposes that the offense was committed other than for profit. See U.S.S.G. § 2L1.1(b)(1) (providing a 3-level decrease if "the offense was committed other than for profit").

government also agreed its motion for upward departure would be based solely on the multiple deaths and injuries resulting from the accident.

At sentencing, the district court followed the presentence report (PSR), which recommended a total offense level of 23 and a criminal history category I. Specifically, the PSR applied U.S.S.G. § 2L1.1, entitled "Smuggling, Transporting, or Harboring an Unlawful Alien." The base level for Aranda-Flores' offense was 12. U.S.S.G. § 2L1.1(a)(2). Six levels were added for "intentionally or recklessly creating a substantial risk of death or serious bodily injury to another person." U.S.S.G. § 2L1.1(b)(5).[3] An additional 8 levels were added because the automobile accident resulted in a person's death. U.S.S.G. § 2L1.1(b)(6)(4). Finally, 3 levels were subtracted for acceptance of responsibility. U.S.S.G. § 3E1.1. Aranda-Flores did not have a prior criminal history.

The district court then granted the government's motion for an upward departure of 4 levels on the grounds that multiple deaths and injuries were not adequately taken into consideration by the applicable sentencing guidelines. U.S.S.G. § 5K2.0; see United States v. Jose-Gonzalez, 291 F.3d 697, 703 (10th Cir. 2002) (holding that, "although death and bodily injury are taken into account by § 2L1.1, the Guideline does not foreclose consideration of multiple deaths and

---

[3] The guideline provides for an increase by 2 levels or an increase to level 18, whichever is greater. U.S.S.G. § 2L1.1(b)(5).

injures as grounds for departure").  This departure resulted in a total offense level of 27, for a guideline range of 70 to 89 months.  The district court imposed a sentence of seventy-nine months followed by thirty-six months of supervised release.[4]

## II.

Aranda-Flores raises one issue on appeal.  He argues that the district court erred as a matter of law when it applied a 6-level enhancement for "recklessly creating a substantial risk of death or serious bodily injury" pursuant to U.S.S.G. § 2L1.1(b)(5).  We agree with Aranda-Flores that neither the district court's factual findings, nor the evidence underlying those findings, support a 6-level enhancement pursuant to § 2L1.1(b)(5).

We review for clear error the district court's factual findings regarding sentencing and review de novo its legal interpretation of the sentencing guidelines.  United States v. Maldonado-Acosta, 210 F.3d 1182, 1183 (10th Cir. 2000); see Jose-Gonzalez, 291 F.3d at 701 (stating that "whether the factual circumstances supporting a departure are permissible departure factors" is a legal question reviewed de novo).  Under § 2L1.1(b)(5), a defendant's offense level is

---

[4]     Aranda-Flores did not oppose the 8-level enhancement pursuant to § 2L1.1(b)(6)(4), or the government's motion for a 4-level upward departure.  However, he challenged the application of the 6-level enhancement pursuant to § 2L1.1(b)(5).  He also requested a downward departure pursuant to § 5K2.0, which the district court denied.

increased "if the offense involved intentionally or recklessly creating a substantial risk of death or serious bodily injury to another person." U.S.S.G. § 2L1.1(b)(5). The commentary to § 2L1.1 states that the "[r]eckless conduct to which the adjustment from subsection (b)(5) applies includes a wide variety of conduct," including, "transporting persons in the trunk or engine compartment of a motor vehicle, carrying substantially more passengers than the rated capacity of a motor vehicle or vessel, or harboring persons in a crowded, dangerous, or inhumane condition." U.S.S.G. § 2L1.1, cmt. n.6 (2004).

As an initial matter, we emphasize that our analysis must focus on Aranda-Flores' conduct, not the tragic deaths and injuries that resulted from his conduct. Section 2L1.1(b)(5) provides an enhancement for a defendant's intentional or reckless *conduct* that creates a substantial risk of death or serious bodily injury. Again, Aranda-Flores does not dispute the 8-level enhancement pursuant to § 2L1.1(b)(6)(4) or the 4-level upward departure pursuant to § 5K2.0, which account for the multiple deaths and injuries in the case. See United States v. Cardena-Garcia, 362 F.3d 663, 666-67 (10th Cir. 2004) (recognizing that § 2L1.1(b)(5) is a conduct enhancement while § 2L1.1(b)(6) is an outcome enhancement); Jose-Gonzalez, 291 F.3d at 703 (explaining that § 2L1.1(b)(6) does not take into account multiple deaths or injuries).

Our prior decisions applying § 2L1.1(b)(5) have involved conduct consistent with the commentary's examples, including vehicles with substantially

more passengers than the rated capacity of the vehicle or vehicles with the rear seats and seatbelts removed. See, e.g., United States v. Maldonado-Ramires, 384 F.3d 1228, 1229 (10th Cir. 2004) (five passengers forced to lie on the floor of a minivan after the rear seats and seatbelts had been removed); Cardena-Garcia, 362 F.3d at 664 (seventeen illegal aliens crammed "into a van designed to hold only seven passengers"); Jose-Gonzalez, 291 F.3d at 699 (sixteen passengers forced to lie on the floor of a van after the rear seats and seatbelts had been removed). The case before us does not involve these extreme and obviously dangerous conditions. The commentary to § 2L1.1(b)(5) states that the guideline is applicable to a "wide variety of conduct," and we have recognized, as have other circuit courts, that the commentary's examples do not foreclose the enhancement's application to other dangerous conditions. Maldonado-Ramires, 384 F.3d at 1231; see United States v. Solis-Garcia, 420 F.3d 511, 514 (5th Cir. 2005) (stating that the enhancement is not limited only to the conduct listed in the examples, but encompasses "'situations that, for one reason or another, pose inherently dangerous risks to the aliens being transported'") (citation omitted); United States v. Rodriguez-Lopez, 363 F.3d 1134, 1138 (11th Cir. 2004) (stating that "the applicable commentary . . . emphasizes that this provision applies to an array of factual scenarios and should be applied flexibly"). But in light of the commentary's examples, it is doubtful that the Sentencing Commission intended § 2L1.1(b)(5) to encompass the defendant's conduct here, i.e., the failure to stay

awake while transporting four illegal aliens on a two-lane highway at night. See Solis-Garcia, 420 F.3d at 516 ("The application of the § 2L1.1(b)(5) enhancement is meant to be flexible; but its words must be given some restrictive meaning.").

The relevant facts are undisputed: Aranda-Flores departed at night to avoid being apprehended by law enforcement; Aranda-Flores chose a circuitous route on a two-lane highway instead of a major interstate; Aranda-Flores drove eight-and-a-half hours and made only one brief stop for gasoline; Aranda-Flores fell asleep at the wheel; and Aranda-Flores did not have a United States driver's license.[5] Considering the totality of the circumstances, the district court ruled that Aranda-Flores' conduct recklessly created a substantial risk of death or serious bodily injury.[6]

Reckless means "a situation in which the defendant was aware of the risk created by his conduct and the risk was of such a nature and degree that to disregard that risk constituted a gross deviation from the standard of care that a reasonable person would exercise in such a situation." U.S.S.G. § 2A1.4 (Involuntary Manslaughter), cmt. n.1 (2004); see United States v. Serawop, 410

---

[5] The record does not indicate whether Aranda-Flores had a Mexican driver's license. The government's brief assumes that Aranda-Flores had a Mexican driver's license. Aple. Br. at 14.

[6] The PSR stated: "The offense conduct reveals that, in order to avoid detection, the defendant deliberately departed from Phoenix late at night, traveled a more remote and indirect two-lane route, stopped on only one occasion, and did not account for resulting driver fatigue as the only driver." Vol. III, at 7-8.

F.3d 656, 663 (10th Cir. 2005) (explaining that "[r]eckless conduct, in the criminal context, is considered a form of intentional conduct because it 'includes an element of deliberateness–a conscious acceptance of a known, serious risk'") (citation omitted); Medina v. City and County of Denver, 960 F.2d 1493, 1496 (10th Cir. 1992) (stating that "reckless intent is established if the actor was aware of a known or obvious risk that was so great that it was highly probable that serious harm would follow and he or she proceeded in conscious and unreasonable disregard of the consequences") (42 U.S.C. § 1983 case).  Reckless conduct "necessarily excludes conduct which is merely negligent."  Sutton v. Utah State Sch. for the Deaf & Blind, 173 F.3d 1226, 1238 (10th Cir. 1999) (citations omitted) (42 U.S.C. § 1983 case); see Black's Law Dictionary 1058 (7th ed. 1999) (characterizing negligent conduct "by a person's failure to exercise the degree of care that someone of ordinary prudence would have exercised in the same circumstance").

State courts have held that falling asleep at the wheel, when considered alone, constitutes negligence, not recklessness.  See, e.g., Clancy v. State, 829 N.E.2d 203, 209 (Ind. Ct. App. 2005) ("[M]erely falling asleep while driving is insufficient evidence of recklessness.  Instead, there must be some proof that the driver consciously ignored, for a period of time, substantial warnings that he or she might fall asleep, and continued to drive despite the warnings, before actually falling asleep and causing an accident.").  Moreover, the proper focus "is the

conduct that led to the defendant's falling asleep at the wheel, not the conduct that takes place while the defendant is asleep." State v. Al-Naseer, 690 N.W.2d 744, 752-53 (Minn. 2005) (citations omitted). Thus, relevant factors include "lack of sleep, length of time at the wheel, presence of sure warning signs, influence of drugs or alcohol, and strenuous activities before driving." Id. at 753 (citations omitted).

Here, there is no evidence in the record that Aranda-Flores had not slept prior to departing from Phoenix, Arizona, or that he consciously disregarded warnings of impending sleep during the trip and continued to drive despite those warnings. Nor is there evidence that Aranda-Flores had a propensity to fall asleep while driving an automobile. Further, without some evidence showing that Aranda-Flores was deprived of sleep before leaving Phoenix, we do not consider driving for eight-and-a-half hours with only one break as reckless conduct. The government emphasizes that Aranda-Flores intentionally drove at night and on a more remote route to avoid detection from authorities. But Aranda-Flores' *motive* for his actions does not resolve the issue of whether his conduct intentionally or recklessly created a substantial risk of death or serious bodily injury to another person. Further, there is nothing unlawful, let alone inherently dangerous, about driving on a two-lane highway at night for eight-and-a-half hours with one break. Finally, we are not persuaded by the government's argument that Aranda-Flores' failure to have a United States driver's license rendered him unfit to drive.

We conclude that Aranda-Flores' conduct leading up to the accident did not recklessly create a substantial risk of death or serious bodily injury to another. Aranda-Flores, as a carrier of four passengers on an illegal mission, should be held to a heightened duty of care. See, e.g., Lamb v. B&B Amusements Corp., 869 P.2d 926, 930 (Utah 1993) (citations omitted). Nevertheless, the evidence, at most, demonstrated that Aranda-Flores fell asleep at the wheel of his Ford Thunderbird after driving on a two-lane highway at night for eight-and-a half hours with one break. These circumstances may rise to the level of negligent conduct, but without additional evidence, they do not establish that Aranda-Flores acted recklessly to create a substantial risk of death or serious bodily injury to others. See Clancy, 829 N.E.2d at 209 n.4 (observing that "briefly and accidently crossing a center line will not support a finding of recklessness, although intentionally crossing a center line may do so"). Accordingly, the district court erred in applying the 6-level enhancement pursuant to § 2L1.1(b)(5).

We REMAND to the district court with directions to vacate Aranda-Flores' sentence and resentence.