F I L E D
**United States Court of Appeals
Tenth Circuit**

**October 10, 2006**

**Elisabeth A. Shumaker
Clerk of Court**

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

UNITED STATES OF AMERICA,

Plaintiff - Appellee,

v.

PAMELA RAYE HOWELL, also
known as Pamela Raye Morgan,

Defendant - Appellant.

No. 05-7023
(E.D. Oklahoma)
(D.Ct. No. CR-04-91-WH)

**ORDER AND JUDGMENT**[*]

Before **KELLY**, **O'BRIEN**, and **TYMKOVICH**, Circuit Judges.

After examining the briefs and appellate record, this panel has determined

unanimously that oral argument would not materially assist the determination of

this appeal. *See* Fed. R. App. P. 34(a)(2); 10th Cir. R. 34.1(G). The case is

therefore ordered submitted without oral argument.

Pamela Raye Howell was indicted for six drug and firearms offenses arising

---

[*] This order and judgment is not binding precedent except under the doctrines of
law of the case, res judicata and collateral estoppel. The court generally disfavors the
citation of orders and judgments; nevertheless, an order and judgment may be cited under
the terms and conditions of 10th Cir. R. 36.3.

from events occurring in Cherokee County, Oklahoma on August 25 and September 24, 2003.[1]  She was convicted of four counts: Count One, possession and distribution of a listed chemical; Count Two, possession with intent to distribute methamphetamine; Count Three, attempt to manufacture methamphetamine; and Count Five, possession of a firearm in furtherance of a drug trafficking crime.  Howell was sentenced to concurrent terms of 189 months imprisonment on all counts except the firearm offense, for which she received a consecutive term of sixty months imprisonment.  She appeals from her conviction and sentence, alleging multiplicity of counts, unconstitutional application of the sentencing guidelines, insufficient evidence and inconsistent verdicts, and admission of evidence in violation of her Fourth Amendment rights.  Exercising jurisdiction under 18 U.S.C. § 3742(a) and 28 U.S.C. § 1291, we affirm.

---

[1] Count One (possession and distribution of listed chemicals) - 21 U.S.C. § 841(c)(1) and 18 U.S.C. § 2; Count Two (possession with intent to distribute methamphetamine) - 21 U.S.C. §§ 841(a)(1), (b)(1)(B)(viii) and 18 U.S.C. § 2; Count Three (attempt to manufacture methamphetamine) - 21 U.S.C. §§ 841(a)(1) and 846, and 18 U.S.C. § 2; Count Four (felon in possession of a firearm) - 18 U.S.C. §§ 922(g)(1) & 2;  Count Five (possession of a firearm in furtherance of a drug trafficking crime) - 18 U.S.C. § 924(c)(1)(A)(I), (c)(1)(B)(I) & (ii); and Count Six (possession of an unregistered firearm) - 26 U.S.C. § 5861(d) and 18 U.S.C. § 2.

Background[2]

On August 25, 2003, officers from the Cherokee County Sheriff's Office and the Cherokee Nation Marshal Service went to a rural location on Bluetop Road, near Cookson, Oklahoma in Cherokee County, to serve an arrest warrant on Bobby Kelly, who was wanted for manufacturing methamphetamine and firearms violations. A mobile home and a fifth-wheel travel trailer were on the property. The officers noticed a "distinct chemical odor" as they approached the structures and also saw burn piles on the ground containing items they recognized as related to the manufacture of methamphetamine. (R. Vol. II at 99.) Concerned that anyone inside the structures might have been overcome by the toxic fumes, the officers entered each, quickly surveying the interior to see if anyone was inside. Thereafter Scott Craig, a narcotics investigator with the Cherokee Nation Marshal Service, and Bryan Swim, a Cherokee County Sheriff's officer, left to obtain a search warrant. Craig and Swim returned around 6:30 that evening with the warrant. Upon their return, they and other officers searched the mobile home and trailer, finding numerous items associated with the manufacture of

---

[2] We note neither brief contains appropriate citations to the record, as required by Rule 28(a)(7), (b) and (e) of the Federal Rules of Appellate Procedure and Rule 28.1(A) of the Tenth Circuit Rules. This unnecessarily complicates our review, as it is not our responsibility to "sift through" the record for relevant facts and proceedings before the district court. *United States v. Rodriquez-Aguirre*, 108 F.3d 1228, 1238 n.8 (10th Cir. 1997) (quotations omitted). We remind counsel advocacy is most effective when it provides a clear and accurate roadmap for the Court's consideration of the issues.

methamphetamine, including glassware, rubber and plastic tubing, digital scales, jars of VitaBlend (a material used as a cutting agent), cans of ether and starter fluid, jugs of muriatic acid, packages of pseudoephedrine, lithium batteries, tanks containing anhydrous ammonia and plastic buckets, some containing liquid later identified as methamphetamine. They also seized numerous firearms, including a shotgun, a derringer, a Smith & Wesson pistol, and an assault rifle. In addition, they located a booby trap, consisting of a mousetrap attached to a wooden plank with a pin set to strike the primer of a shotgun shell.

Around 9:30 p.m., the officers stopped a Cadillac that had turned off the paved road and was headed up to the property. Clonnie Layman was driving the car; Howell was the passenger. Both individuals were removed from the vehicle and arrested after officers found a substantial amount of methamphetamine on Layman, a plastic bag at Howell's feet containing two packages of VitaBlend and three glass pipes (including one with a brown residue), over $3,400.00 in the console of the car, and a baggie containing more methamphetamine in a jewelry case/tool box in the trunk. Howell claimed both the vehicle and the money were hers; a briefcase in the trunk of the car contained papers bearing her name.

After her release from detention, Howell returned to Cookson. One month later, on September 24, Marshal Craig and fellow officer Brett Mull had Howell under surveillance. Craig watched Howell and her daughter leave the Shadow

Ridge Trailer Park in a white van. Mull followed them as Howell drove on to the highway. Mull watched as Howell crossed over the center line multiple times. Mull initiated a traffic stop just before 4:00 p.m. He was aware there were outstanding warrants on Howell out of Tulsa County. He confirmed the validity of the warrants, then took Howell back to his patrol car and placed her under arrest. Because the van had been pulled over on a stretch of road with no shoulder, a "very dangerous spot," Mull decided to tow the van, which necessitated inventorying its contents first. (R. Vol. II at 208.) When Mull opened the back of the van, he saw two large cardboard boxes bearing the label "[f]resh chicken." The boxes actually contained thousands of pseudoephedrine tablets, some still in blister packs, others loose inside a container, and empty blister packs that had held thousands more tablets.

On July 15, 2004, an indictment was filed charging Howell with six drug and firearm offenses. Count One charged Howell with possession of pseudoephedrine based on the search of the van after she was stopped on September 24, 2003. Counts Two through Six were all based on evidence seized during the August 25, 2003 search of the mobile home and travel trailer.

Howell's jury trial began on August 30, 2004. At the conclusion of the government's case, defense counsel moved for an acquittal on all counts pursuant to Rule 29 of the Federal Rules of Criminal Procedure. The government agreed

-5-

an acquittal should be granted on Count Six, possession of an unregistered firearm, to wit, the booby trap found in the travel trailer. The district court granted the motion as to Count Six but denied it as to Counts One through Five. Defense counsel renewed the motion at the end of the case. The district court admitted it was "troubled" by how close the evidence was on Counts Three, Four and Five, but ultimately denied the motion in its entirety. (R. Vol. III at 434.) After deliberating the next day, the jury returned a guilty verdict on Counts One, Two, Three and Five, and a not guilty verdict on Count Four, felon in possession of a firearm. Defense counsel made a post-trial motion for judgment of acquittal, which the district court denied.

## Discussion

Howell raises four issues challenging her conviction and sentence. First, she contends her convictions on Counts Two, Three and Five were multiplicitous, and thus violated her Fifth Amendment rights against double jeopardy. Next, she alleges unconstitutional application of the sentencing guidelines. In her third issue, she contends the jury returned inconsistent verdicts on Counts Four, Five and Six, and the evidence was insufficient to convict her on Count Five, possession of a firearm in furtherance of a drug trafficking crime. Finally, she contends her Fourth Amendment rights against unreasonable search and seizure were violated by her arrest and the subsequent search of her van.

1.    Multiplicity of charges

Howell contends her convictions and sentences on Counts Two, Three and Five are multiplicitous, thus subjecting her "to multiple punishments for the same activity on the same date at the same location." (Appellant's Br. at 8.) Howell did not raise this issue before the district court in a pretrial motion, necessitating review under the plain error standard.[3] *United States v. Graham*, 305 F.3d 1094, 1100 (10th Cir. 2002). "Under the plain error standard, [Howell] must show clear or obvious error that affected her substantial rights and seriously affected the integrity of the judicial proceedings." *United States v. McCullough*, 457 F.3d 1150, 1162 (10th Cir. 2006) (quotations omitted). Howell has not met her burden.

"Multiplicity refers to multiple counts of an indictment which cover the same criminal behavior." *United States v. Johnson*, 130 F.3d 1420, 1424 (10th Cir. 1997). Although "multiplicity is not fatal to an indictment," *id.* (quotations omitted), multiplicitous counts are considered "improper because they allow multiple punishments for a single criminal offense." *United States v. Jenkins*, 313 F.3d 549, 557 (10th Cir. 2002). "The threat of multiple sentences for the same

---

[3] In response to the presentence report her counsel argued "there was a multiplicity problem in charging [Howell] in several different Counts with possession of a firearm." (Appellant's App. at 52.) Raising this issue after trial necessitates review under plain error. *United States v. Graham*, 305 F.3d 1094, 1099 (10th Cir. 2002) (raising claim for the first time in a post-judgment motion for judgment of acquittal requires review under plain error standard). We note Howell was represented by new counsel at sentencing.

offenses raises double jeopardy implications." *Johnson*, 130 F.3d at 1424.

A "person may be prosecuted for more than one crime based on the same conduct (1) if each crime requires proof of a fact that the other does not or (2) if Congress has clearly expressed its intent to impose cumulative punishment for the same conduct under different statutory provisions." *United States v. Morris*, 247 F.3d 1080, 1083 (10th Cir. 2001) (quotations omitted). The convictions of which Howell now complains, Counts Two, Three and Five, involved distinct offenses, each of which required "proof of a fact that the other[s] [did] not," and, in the case of Count Five (the firearm possession offense), a crime for which "Congress has clearly expressed its intent to impose cumulative punishment for the same conduct under different statutory provisions." *Id.*

Count Two, possession with intent to distribute methamphetamine, was based on the distribution quantity of methamphetamine found in the jewelry case/tool box in the trunk of the Cadillac in which Howell was a passenger. The jury was instructed the government had to prove Howell "knowingly and intentionally possessed methamphetamine," and she "possessed [it] with the intent to distribute it." (R. Vol. IV at 454.)

Count Three, attempt to manufacture methamphetamine, in contrast, was based on the substances found "in process" in the mobile home and travel trailer. The jury was instructed the elements of this offense were: "A person

manufactured methamphetamine; he or she knew the substance he or she was manufacturing was methamphetamine; and that person acted intentionally, that is it was his or her conscious desire to manufacture methamphetamine." (*Id.* at 455.) The jury was further instructed the government had to prove Howell "intended to commit the crime of manufacturing methamphetamine" and she "did an act constituting a substantial step towards the commission of that crime which strongly corroborate[d] [her] criminal intent." (*Id.*) The jury was also instructed about what constituted a "substantial step":

> A substantial step must be something more than mere preparation, yet may be less than the last act necessary before the actual commission of the substantive crime. In determining whether or not the defendant took a substantial step towards the commission of a crime you must consider all of the evidence admitted in the case concerning the defendant and the alleged commission of that crime. In order to find the defendant guilty of committing the crime of attempted manufacture of methamphetamine the government must prove beyond a reasonable doubt that the mental processes of the defendant passed from the stage of thinking about the crime of manufacturing methamphetamine, to actually intending to commit that crime and the physical process of the defendant went beyond and passed from the stage of mere preparation to some firm, clear, and undeniable action to accomplish that intent.

(*Id.* at 456.)

The offenses charged in Counts Two and Three each required proof of distinct facts: actual possession of methamphetamine and intent to distribute for Count Two, and an intentional act in manufacturing methamphetamine for Count Three. These are separate offenses. No error occurred in indicting, convicting

-9-

and sentencing Howell for each.

In Count Five, Howell was indicted with possessing several firearms in furtherance of the attempted manufacturing of methamphetamine offense (Count Three), in violation of 18 U.S.C. § 924(c)(1)(A)(i) and (B)(i) and (ii).[4] The relevant language of § 924(c)(1) clearly reveals Congress' intent to impose multiple punishments on a defendant who possesses a firearm in furtherance of a drug trafficking crime:

> [A]ny person who . . . in furtherance of any [crime of violence or any drug trafficking crime], possesses a firearm, shall, in addition to the punishment provided for such crime of violence or drug trafficking crime, (i) be sentenced to a term of imprisonment of not less than 5 years . . . .

18 U.S.C. § 924(c)(1)(A)(i); *see also United States v. Pearson*, 203 F.3d 1243, 1268 (10th Cir. 2000).

Given such a clear expression of Congressional intent "to impose cumulative punishment for the same conduct under different statutory provisions," *Morris*, 247 F.3d at 1083, Counts Three and Five were not multiplicitous. Nor

---

[4] Count Three contained language regarding possession of these same firearms while attempting to manufacture methamphetamine. During its deliberations, the jury sent the judge a note asking why "the possession of firearms [was] listed as part of count three[.]" (R. Vol. IV at 494.) The government stated it had drafted the indictment in that manner to obtain a two-point enhancement under the guidelines in light of *Blakely v. Washington*, 542 U.S. 296 (2004). The judge responded to the jury, "The language is unnecessary and should be ignored. The indictment is not evidence; read the instructions." (*Id.* at 500.) Even had this ameliorative action not occurred, there was no multiplicity in Counts Three and Five.

-10-

did Howell's consecutive sentence on Count Five constitute double jeopardy. *United States v. Battle*, 289 F.3d 661, 669 (10th Cir. 2002).

2.    Sentencing

Howell was sentenced on February 10, 2005, one month after the United States Supreme Court issued its decision in *United States v. Booker,* 543 U.S. 220 (2005).  Howell's counsel had objected to the presentence report on the basis of *Blakely v. Washington,* 542 U.S. 296 (2004).  At sentencing, the district court consulted the guidelines, acknowledged their advisory nature and articulated the factors set forth in 18 U.S.C. § 3553(a) upon which it relied in determining Howell's sentence.  On appeal Howell makes no mention of *Booker*, instead challenging the constitutionality of the guidelines under *Blakely* and arguing she was improperly sentenced based on information in the presentence report that did not involve the instant offenses.  As misdirected as Howell's contentions might be, she has preserved this issue for review by raising an objection under *Blakely*. *United States v. Marshall,* 432 F.3d 1157, 1160 (10th Cir. 2005); *United States v. Labastida-Segura*, 396 F.3d 1140, 1142 (10th Cir. 2005).

> In [*Booker*], the Supreme Court held that the mandatory application of the Guidelines to judge-found facts (other than a prior conviction) violates the Sixth Amendment.  Rather than declare the Guidelines unconstitutional, however, the Court excised the provision of the federal sentencing statute that made the Guidelines mandatory, 18 U.S.C. § 3553(b)(1), effectively making the Guidelines advisory.  The Court also excised 18 U.S.C. § 3742(e), which set forth the standard of review on appeal, and held that the proper standard of review for

-11-

sentences imposed post-*Booker* is "reasonableness."

*United States v. Kristl*, 437 F.3d 1050, 1053 (10th Cir. 2006) (citation omitted).

In determining whether a sentence is reasonable, we "review factual findings for clear error and legal determinations de novo." *Kristl*, 437 F.3d at 1054; *see also United States v. Mares*, 441 F.3d 1152, 1159-60 (10th Cir. 2006). "[If] we determine under the appropriate standard of review that the district court correctly determined the relevant Guidelines range, and if the defendant was subsequently sentenced to a term of imprisonment within that range, then the sentence is entitled to a rebuttable presumption of reasonableness on appeal." *Kristl*, 437 F.3d at 1054.

Howell's guideline range was 188 to 235 months imprisonment, plus a mandatory consecutive sixty month term for Count Five, the firearms possession offense. The government argued strenuously for a sentence at the maximum end of the range, something the district court clearly was not comfortable with.

> I don't think I have a reputation for going easy on cases involving methamphetamine, but even -- I mean, we have a 60 month consecutive term here and even the low end of the guideline range on Count 1, that adds up to about . . . 15 years. The high end of the range you are asking me to go to - - I mean, we are up to over 20 to 25 years. That is getting . . . real close to what I've given to armed bank robbers who take hostages. . . . [W]ithout reducing the significance of anything [Howell] has been convicted of or her actions or her testimony, all of which I'm completely aware of, I just don't see that this comes up to armed robbery with hostage taking.

(R. Vol. V at 5-6.)

-12-

The district court sentenced Howell to concurrent terms of 189 months imprisonment on Counts One, Two and Three, and the mandatory consecutive sixty month term on Count Five. The district court articulated the factors it considered in sentencing Howell:

> In formulating the sentence imposed, I have considered the nature and circumstances of the offense, as well as the characteristics and criminal history of the defendant. I have taken into account and into further consideration the sentencing guideline calculations contained within the Presentence Report, in addition to any objections, clarifications, additions or deletions to those calculations identified in the addendum to the report or announced in open court today. While the Court recognizes that it is not bound by the sentencing guidelines, the Court has considered them and finds them to be advisory in nature. The Court further finds that the guideline calculated sentence is reasonable in this case.
>
> The sentence prescribed by this Court reflects the seriousness of the offense, promotes respect for the law, and provides just punishment for the offense. This sentence affords adequate deterrence to criminal conduct, protects the public from further crimes of this defendant and provides correctional treatment for the defendant in the most effective manner.

(R. Vol. V at 15-16.)

The record reflects the district court "correctly determined the relevant Guidelines range," *Kristl*, 437 F.3d at 1054, and Howell's sentence was clearly within that range — in fact, it was at the low end of the range. Thus, the sentence is presumptively reasonable.

"[A] defendant may rebut this presumption by demonstrating that the sentence is unreasonable in light of the other sentencing factors laid out in [18

-13-

U.S.C.] § 3553(a)." *Id.* at 1055. Howell has not attempted to do so. In any event, the record clearly reflects the district court's appropriate consideration of, and reliance upon, the § 3553(a) factors and the guidelines, in their advisory capacity. *See United States v. Resendiz-Patino*, 420 F.3d 1177, 1184 n.6 (10th Cir. 2005) ("Relieved of the mandatory application of the guidelines by *Booker*, district courts are now permitted to give more sway in sentencing to the factors enumerated in 18 U.S.C. § 3553(a)."), *cert. denied*, 126 S.Ct. 1098 (2006). The sentence imposed by the district court was reasonable.

3.      Sufficiency of the evidence and consistency of verdicts

Howell argues the evidence was insufficient to support her conviction under Count Five, possession of a firearm in furtherance of a drug trafficking crime. In support of this argument, she points to the jury's acquittal on Count Four, felon in possession of a firearm. She also argues her acquittal on Count Four demonstrates the jury verdict was inconsistent on Counts Four and Five.[5]

At the outset, we note Howell's argument "improperly conflates the distinction between insufficiency of the evidence and inconsistent verdicts." *United States v. Veal*, 153 F.3d 1233, 1252 (11th Cir. 1998). The Supreme Court

---

[5] Howell asserts the jury's verdict was inconsistent on Counts Four, Five and Six. There was no jury verdict on Count Six because the district court granted Howell's motion for judgment of acquittal as to that count at the close of the government's case in chief. We thus limit our discussion to Counts Four and Five.

has emphasized that "[s]ufficiency-of-the evidence review involves assessment by the courts of whether the evidence adduced at trial could support any rational determination of guilt beyond a reasonable doubt," which review is "independent of the jury's determination that evidence on another count was insufficient." *United States v. Powell*, 469 U.S. 57, 67 (1984).

In *Powell*, the Court reaffirmed the rule pronounced by Justice Holmes in *Dunn v. United States*: "'Consistency in the verdict is not necessary. Each count in an indictment is regarded as if it was a separate indictment.'" *Powell*, 469 U.S. at 62 (quoting *Dunn v. United States*, 284 U.S. 390, 393 (1932)); *United States v. Swafford*, 766 F.2d 426, 430 (10th Cir. 1985). The Court noted inconsistent verdicts make it "unclear whose ox has been gored." *Powell,* 469 U.S. at 65. The jury's acquittal on one count and conviction on another are as likely a result of "mistake, compromise, or lenity" towards the defendant as they are a windfall to the government on the other. *Id.* "Given this uncertainty, and the fact that the Government is precluded from challenging the acquittal, it is hardly satisfactory to allow the defendant to receive a new trial on the conviction as a matter of course." *Id.*

We have followed this rule, refusing to speculate as to the reasons for any apparent inconsistency in the verdicts, and not drawing from an acquittal on one count "any inference regarding the basis of the jury's conviction" on another.

-15-

*United States v. Espinoza*, 338 F.3d 1140, 1148 (10th Cir. 2003), *cert. denied*, 541 U.S. 950 (2004); *see also McCullough*, 457 F.3d at 1161 n.2. The jury was informed at the beginning of trial of a stipulation that Howell had previously "been convicted of a crime for which the maximum punishment exceeded one year," and the firearms had been transported in interstate commerce. (R. Vol. II at 14.) No further evidence was presented as to Howell's criminal history, although the district court did instruct the jury as to the elements of the offense alleged in Count Four and the government mentioned Howell's status as a convicted felon during its closing argument. We will not speculate as to why the jury returned the verdicts it did; we will simply note Howell received the benefit of an acquittal on Count Four, "and it is neither irrational nor illogical to require her to accept the burden of conviction on the counts on which the jury convicted." *Powell*, 469 U.S. at 69.

We focus now on the sufficiency of the evidence argument. We review such claims de novo. *United States v. Hamilton*, 413 F.3d 1138, 1143 (10th Cir. 2005). In doing so, we "ask only whether taking the evidence - both direct and circumstantial, together with the reasonable inferences to be drawn therefrom - in the light most favorable to the government, a reasonable jury could find the defendant guilty beyond a reasonable doubt." *United States v. Zabriskie,* 415 F.3d 1139, 1144 (10th Cir. 2005) (quotations omitted). "[W]e evaluate the

sufficiency of the evidence by considering the collective inferences to be drawn from the evidence as a whole." *United States v. Brooks*, 438 F.3d 1231, 1236 (10th Cir. 2006) (quotations omitted). "We will not reverse a conviction based upon insufficient evidence unless no rational trier of fact could have reached the disputed verdict." *United States v. Wilson*, 182 F.3d 737, 742 (10th Cir. 1999).

Howell does not dispute there was significant evidence introduced about firearms seized from the property on Bluetop Road. She instead contends there was insufficient evidence to tie her to the property and thus to any of the firearms. She relies on the Supreme Court's decision in *Bailey v. United States,* 516 U.S. 137 (1995), in support of her contention there was no evidence she used or possessed a firearm in furtherance of the attempted manufacture of methamphetamine, and thus her conviction on Count Five cannot stand.

"In *Bailey*, the Court strictly defined the term 'use' in § 924 to denote the active employment in connection with the crime. The Court stated that simply having a gun nearby for use if needed during drug crimes would not satisfy the 'use' provision of the statute." *United States v. Basham*, 268 F.3d 1199, 1207 (10th Cir. 2001) (citing *Bailey*, 516 U.S. at 149-50). In 1998, Congress amended § 924(c)(1) in response to *Bailey*, "to explicitly criminalize 'possession' when that possession is 'in furtherance of' a drug trafficking crime." *United States v. Robinson*, 435 F.3d 1244, 1251 (10th Cir. 2006). "Obtaining a conviction under

the 'possession' prong of § 924(c)(1) requires the government to prove (1) that the defendant possessed a firearm and (2) that the possession was 'in furtherance of' a drug trafficking offense or crime of violence." *United States v. Avery*, 295 F.3d 1158, 1172 (10th Cir. 2002) (citing *Basham*, 268 F.3d at 1206).

"Possession under § 924(c)(1) can be shown through either constructive or actual possession." *United States v. Lott*, 310 F.3d 1231, 1247 (10th Cir. 2002). Constructive possession exists "where the defendant has the power to exercise control or dominion over the item. Control or dominion over the premises where the item is found is therefore a factor, but not a requirement, for finding constructive possession of the item itself." *United States v. Lopez*, 372 F.3d 1207, 1212-13 (10th Cir. 2004) (quotations and citations omitted). The government may prove constructive possession with either direct or circumstantial evidence. *Lott,* 310 F.3d at 1247.

In cases involving constructive possession of premises which are jointly occupied, "care is required." *Lopez*, 372 F.3d at 1212 n.4. In such situations, "mere control or dominion over the place in which the contraband is found is not enough to establish constructive possession" of the contraband itself. *Id.* (quotations omitted). "[T]he government is required to present direct or circumstantial evidence to show some connection or nexus individually linking the defendant to the contraband." *Id.* (quotations omitted).

Evidence of the defendant's intent in possessing the firearm is usually circumstantial, *Robinson*, 435 F.3d at 1251, and may be demonstrated by several factors: "the type of drug activity being conducted, the accessibility of the firearm, the type of firearm, the legal status of the firearm, whether the firearm is loaded, the proximity of the firearm to drugs or drug profits, and the time and circumstances under which the firearm is found." *Avery*, 295 F.3d at 1180 (quotations omitted). The evidence must support "at least a plausible inference that the defendant had knowledge of and access to the weapon" for a conviction to stand. *United States v. Al-Rekabi*, 454 F.3d 1113, 1119 (10th Cir. 2006) (quotations and citation omitted).

Turning to the argument presented here, Howell contends no evidence was presented which placed her inside the structures where the weapons were found. She also notes the evidence clearly demonstrated that the firearms were not registered to her and her fingerprints were not on any of the weapons.[6]

However, Howell ignores the evidence from which the jury could reasonably infer her on-going presence on the property. She was arrested while

---

[6] Howell also argues the reference to firearms in Count Three of the indictment may have misled the jury into believing it was required to convict her of Count Five, possession, once it convicted her of the substantive offense in Count Three. As noted previously, the jury questioned the firearms language in Count Three and was instructed to disregard it. *See supra* n.4. The language of the indictment provides no support for Howell's argument.

driving up to the property in a vehicle she claimed as hers. She was riding with Clonnie Layman, whose connection to the property was well-established. Daniel Layman, Clonnie's nephew, saw Howell on the property several days before the search. He testified Clonnie told Howell to let him on the property - indicating she exerted some control over access to the area - and that he gave Howell the shotgun which was later seized inside the travel trailer.

The officers who searched the travel trailer found a woman's sandal in the living room — a photograph of which was shown to the jury — and women's clothing in the bedroom. Feminine hygiene items were seen in the bathroom and Stridex makeup pads were observed on one of the burn piles. Other testimony placed Layman and Howell together in the mobile home in Cookson during the month of September, further evidence of an on-going relationship between them.[7] This evidence was sufficient for a rational juror to reasonably infer Howell had been on the property and in the structures where the methamphetamine lab was discovered and that she exerted some control or dominion over the premises. In addition, Daniel Layman's testimony that he gave the shotgun to Howell

_____

[7] The jury also listened to tapes of telephone conversations Howell made while incarcerated. During these conversations, Howell apparently discussed trips she made to obtain pseudoephedrine and a return trip to the property on Bluetop road to retrieve a second booby trap. Unfortunately, these tapes were not transcribed as they were played for the jury, nor were the tapes themselves included in the record on appeal. While we are thus unable to refer to them directly, we do know the jury heard additional evidence which it could have considered in its deliberations.

established a nexus between at least that firearm and Howell. *See Lopez*, 372 F.3d at 1212 n.4. This evidence supports "at least a plausible inference that [Howell] had knowledge of and access to the weapon[s] . . . ." *Al-Rekabi*, 454 F.3d at 1119 (quotations omitted).

In determining whether Howell possessed the weapons with the intent of furthering the attempted manufacturing of methamphetamine, the jury could consider the types and number of firearms, whether they were loaded, their proximity to the drugs and accessibility to the defendant, and the type of drug activity being conducted. *Avery*, 295 F.3d at 1180. This evidence was substantial. The officers testified about the number of weapons seized from the travel trailer: a shotgun, a derringer, a Smith & Wesson pistol, and an assault rifle. They testified where the weapons were found: the derringer was in the living room next to the television; the pistol was inside a cabinet in the living room next to containers of ammunition; the shotgun, visible from the front door, was in the bedroom as was the assault rifle. Although the assault rifle was not loaded, the pistol was. All of the weapons were operable and all were located in a one-bedroom, thirty-seven foot travel trailer, in the immediate vicinity of methamphetamine and methamphetamine manufacturing material.

The sheer number of weapons and their strategic location in a small travel trailer in which "the instrumentalities of methamphetamine manufacturing were

also found is sufficient evidence from which a jury could conclude that the purpose of the [weapons] was to provide defense or deterrence in furtherance of attempting to manufacture methamphetamine." *Lott*, 310 F.3d at 1248; *see Brooks*, 438 F.3d at 1238 (evidence of loaded revolver "within ten feet of the recovered evidence of an active methamphetamine laboratory" sufficient to sustain conviction under § 924(c)(1)(A)).

The government's evidence, and the collective inferences that can be drawn from it, was sufficient to sustain Howell's conviction for possession of a firearm in furtherance of a drug trafficking crime.

4.      Suppression of evidence from September 24 arrest and search

In her final issue, Howell argues her Fourth Amendment rights were violated on September 24, 2003, when she was arrested and questioned prior to being advised of her rights pursuant to *Miranda v. Arizona*, 384 U.S. 436 (1966). Her argument is without merit since it is not based upon what actually occurred at trial.

On the morning of the first day of trial, Howell filed a motion in limine seeking to suppress, *inter alia*, all statements and evidence obtained during her arrest on September 24, 2003. The motion did not articulate which specific evidence was at issue, referring only to "Howell speak[ing] of her child seeing her going to jail and being arrested, 'her trouble in Okmulgee', and 'Court papers'

-22-

she needs the Officer to obtain." (R. Vol. I, Doc. 30 at 4.)

The district court construed the first part of Howell's motion as a motion to suppress and denied it as moot, based on the government's position it would not introduce any of Howell's post-arrest statements. At trial, the government elicited no testimony about any statements Howell made during her arrest. When Officer Brett Mull testified, he made no reference to any statements made by Howell, other than her response indicating the van she was driving belonged to Clonnie Layman and she had borrowed it from him. Defense counsel did not object to any of Mull's testimony about the stop, arrest and subsequent search of the van. Counsel did not even object to the pseudoephedrine tablets found in the back of the van, which formed the basis for Count One. The only disputed evidence was a portion of the videotape filmed by Officer Mull's in-car video camera, which showed his drug dog's walk around the van, and the discovery of the large cardboard boxes containing the pseudoephedrine in the back of the van. Defense counsel's objection was to having only a portion of the video played for the jury, rather than the entire hour-and-a-half long tape. The district court overruled the objection and allowed only a portion of the tape, without audio, to be played.

Howell's argument on appeal is without any basis in fact because none of the evidence to which she objects was ever introduced at trial. We do not engage

in a pointless analysis of legal principles which were not implicated at trial. *Griffin v. Davies*, 929 F.2d 550, 554 (10th Cir. 1991) ("We will not undertake to decide issues that do not affect the outcome of a dispute."); *United States v. Torres*, 182 F.3d 1156, 1164 n.2 (10th Cir. 1999) (court will not issue "an opinion that is unnecessary and meaningless as applied to the defendant in this case").

AFFIRMED.

**Entered by the Court:**

**Terrence L. O'Brien**
United States Circuit Judge