**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**August 11, 2014**

**Elisabeth A. Shumaker**
**Clerk of Court**

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

UNITED STATES OF AMERICA,

      Plaintiff - Appellee,

v.

PAMELA RAYE HOWELL,

      Defendant - Appellant.

No. 13-7023
(D.C. Nos. 6:08-CV-00238-RAW-SPS &
6:04-CR-00091-RAW-1)
(E.D. Okla.)

**ORDER AND JUDGMENT**[*]

Before **LUCERO**, **TYMKOVICH**, and **BACHARACH**, Circuit Judges.

Pamela Raye Howell appeals the district court's denial of her 28 U.S.C. § 2255 motion to vacate, set aside, or correct her sentence following her convictions on several methamphetamine-related offenses. Exercising jurisdiction under 28 U.S.C. §§ 1291 and 2253, we affirm.

---

[*] This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel. This court generally disfavors the citation of orders and judgments; nevertheless, an order and judgment may be cited under the terms and conditions of 10th Cir. R. 32.1.

# I

In Howell's direct appeal, we described the facts giving rise to her arrest and indictment as follows:

On August 25, 2003, officers from the Cherokee County Sheriff's Office and the Cherokee Nation Marshal Service went to a rural location on Bluetop Road, near Cookson, Oklahoma in Cherokee County, to serve an arrest warrant on Bobby Kelly, who was wanted for manufacturing methamphetamine and firearms violations. A mobile home and a fifth-wheel travel trailer were on the property. The officers noticed a "distinct chemical odor" as they approached the structures and also saw burn piles on the ground containing items they recognized as related to the manufacture of methamphetamine. Concerned that anyone inside the structures might have been overcome by the toxic fumes, the officers entered each, quickly surveying the interior to see if anyone was inside. Thereafter Scott Craig, a narcotics investigator with the Cherokee Nation Marshal Service, and Bryan Swim, a Cherokee County Sheriff's officer, left to obtain a search warrant. Craig and Swim returned around 6:30 that evening with the warrant. Upon their return, they and other officers searched the mobile home and trailer, finding numerous items associated with the manufacture of methamphetamine, including glassware, rubber and plastic tubing, digital scales, jars of VitaBlend (a material used as a cutting agent), cans of ether and starter fluid, jugs of muriatic acid, packages of pseudoephedrine, lithium batteries, tanks containing anhydrous ammonia and plastic buckets, some containing liquid later identified as methamphetamine. They also seized numerous firearms, including a shotgun, a derringer, a Smith & Wesson pistol, and an assault rifle. In addition, they located a booby trap, consisting of a mousetrap attached to a wooden plank with a pin set to strike the primer of a shotgun shell.

Around 9:30 p.m., the officers stopped a Cadillac that had turned off the paved road and was headed up to the property. Clonnie Layman was driving the car; Howell was the passenger. Both individuals were removed from the vehicle and arrested after officers found a substantial amount of methamphetamine on Layman, a plastic bag at Howell's feet containing two packages of VitaBlend and three glass pipes (including one with a brown residue), over $3,400.00 in the console of the car, and a baggie containing more methamphetamine in a jewelry case/tool box in the trunk. Howell claimed both the vehicle and the money were hers; a briefcase in

- 2 -

the trunk of the car contained papers bearing her name.

　　　　After her release from detention, Howell returned to Cookson. One month later, on September 24, Marshal Craig and fellow officer Brett Mull had Howell under surveillance. Craig watched Howell and her daughter leave the Shadow Ridge Trailer Park in a white van. Mull followed them as Howell drove on to the highway. Mull watched as Howell crossed over the center line multiple times. Mull initiated a traffic stop just before 4:00 p.m. He was aware there were outstanding warrants on Howell out of Tulsa County. He confirmed the validity of the warrants, then took Howell back to his patrol car and placed her under arrest. Because the van had been pulled over on a stretch of road with no shoulder, a "very dangerous spot," Mull decided to tow the van, which necessitated inventorying its contents first. When Mull opened the back of the van, he saw two large cardboard boxes bearing the label "[f]resh chicken." The boxes actually contained thousands of pseudoephedrine tablets, some still in blister packs, others loose inside a container, and empty blister packs that had held thousands more tablets.

United States v. Howell, 199 F. App'x 697, 699-700 (10th Cir. 2006) (unpublished) (citations omitted).

A federal grand jury returned a six-count indictment on July 15, 2004. Janice Purcell was appointed to represent Howell. According to Howell, Purcell met with her "a couple of times" before the trial, which began in August 2004. The meetings included one discussion, about a week before trial, during which Purcell presented Howell with a plea bargain offered by the prosecution. The plea required Howell to plead guilty to Count One of the indictment, which arose from Howell's possession of the pseudoephedrine tablets found in the van. Howell signed a letter reflecting her rejection of the plea offer and proceeded to trial.

Five of the six original counts in the indictment were submitted to the jury, which

- 3 -

convicted Howell on four counts. She was sentenced to 249 months' imprisonment. We affirmed her sentence on direct appeal. Howell, 199 F. App'x at 709. Following that decision, Howell asked her counsel on direct appeal, Bret Smith, to file a petition for rehearing. She brought to his attention an alleged factual error by the original panel. According to Howell, Smith responded with a letter stating that he saw no reason to file such a petition. The Supreme Court subsequently denied certiorari. Howell v. United States, 551 U.S. 1173 (2007).

Howell filed the instant § 2255 motion, alleging ineffective assistance of trial and appellate counsel. After the district court denied her request for an evidentiary hearing, we reversed and remanded for such a hearing. United States v. Howell, 383 F. App'x 782, 783 (10th Cir. 2010) (unpublished). Following the hearing, a magistrate judge recommended that Howell's motion be denied. After receiving Howell's written objections to the recommendation, the district court adopted the recommendation and entered an order denying Howell's § 2255 motion. We granted a COA to consider ineffective assistance of counsel at both the trial and appellate levels.

## II

We review claims of ineffective assistance of counsel at both the trial and appellate levels de novo because they present mixed questions of law and fact. Boyd v. Ward, 179 F.3d 904, 913 (10th Cir. 1999). Factual findings by the district court are reviewed only for clear error. United States v. Orange, 447 F.3d 792, 796 (10th Cir. 2006). The familiar two-pronged test from Strickland v. Washington, 466 U.S. 668

- 4 -

(1984), governs our analysis. Howell must show that the performance of her lawyers was constitutionally deficient and that the deficient performance prejudiced her defense. Id. at 687. The prejudice prong requires a showing "that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceedings would have been different." Id. at 694.

## A

Howell alleges that trial counsel Purcell's performance was constitutionally deficient in three areas: (1) failing to investigate certain witnesses; (2) failing to properly identify the evidence supporting Count Two of the indictment; and (3) failing to properly advise Howell regarding the government's plea offer. Howell also urges us to find that the cumulative effect of these alleged errors warrants reversal.

## 1

Regarding the investigation of witnesses, the magistrate judge assessed Purcell's performance with respect to Clonnie Layman ("Clonnie"), Daniel Layman ("Daniel"), Jimmy Whorton, Tatum Sorrels, and Destini Rainwater. "[W]e have often held that an attorney's failure to present a defense theory or mitigation evidence cannot be considered strategic where that decision was influenced by inadequate preparation and investigation." Bullock v. Carver, 297 F.3d 1036, 1049 n.7 (10th Cir. 2002). "[C]ounsel has a duty to make reasonable investigations or to make a reasonable decision that makes particular investigations unnecessary. In any ineffectiveness case, a particular decision not to investigate must be directly assessed for reasonableness in all the circumstances,

applying a heavy measure of deference to counsel's judgments." Strickland, 466 U.S. at 691. "In judging the defense's investigation, as in applying Strickland generally, hindsight is discounted by pegging adequacy to counsel's perspective at the time investigative decisions are made . . . ." Rompilla v. Beard, 545 U.S. 374, 381 (2005) (quotation omitted). "[R]easonably diligent counsel may draw a line when they have good reason to think further investigation would be a waste." Id. at 383.

Our review of the record supports the magistrate judge's conclusion that Purcell made significant efforts to contact Clonnie, Sorrels, and Rainwater. Clonnie's lawyers told Purcell that he would not speak to her because his own criminal appeal was pending. The magistrate judge similarly found that Purcell was denied permission on "three separate occasions" to interview Rainwater, Howell's daughter. Additionally, Purcell contacted authorities, ran specialized internet searches, employed an investigator, and interviewed Howell in an unavailing effort to locate Sorrels. We discern no clear error in the magistrate judge's factual findings. Even the defense attorney called by Howell at the evidentiary hearing for her § 2255 motion acknowledged the difficulty of locating certain witnesses and, in particular, the possibility that counseled witnesses may refuse to take part in a defense attorney's investigation.[1] Howell has not shown that Purcell's choice to

---

[1] On appeal, Howell also urges us to conclude that Purcell provided deficient representation because of her failure to call Seresa Kesselring as a witness at trial. Howell, however, failed to include Kesselring in her original § 2255 motion or the memorandum in support. Even assuming the argument was properly raised, Purcell's testimony similarly reflects significant efforts to locate Kesselring.

"draw a line" regarding the investigations of these witnesses was improper, Rompilla, 545 U.S. at 381, and we agree that Purcell's efforts were not constitutionally deficient.

Although Purcell did not make an effort to interview Jimmy Whorton, the magistrate judge found that Howell failed to demonstrate what helpful evidence such an investigation could have uncovered. Assuming arguendo that Purcell's failure to investigate was deficient, we cannot discern any prejudice arising from the alleged deficiency. Howell suggests that "the failure to interview Mr. Whorton goes to the cumulative prejudice from Ms. Purcell's general lack of investigation in the case," yet she does not indicate with any specificity the nature of the alleged prejudice. Howell also urges us to conclude that knowing more about Whorton's testimony would have allowed her to make a better-informed decision regarding the government's plea offer. The plea, however, required Howell to plead guilty to only Count One of the indictment, which arose from Howell's possession of thousands of pseudoephedrine tablets found in the van. Howell does not suggest how an interview with Whorton possibly could have changed her calculus regarding the plea, particularly given her awareness that he would be testifying against her. Howell's speculation that knowledge about Whorton's testimony would have informed her decision on the plea does not meet the required showing of "a reasonable probability that . . . the result of the proceeding would have been different." Strickland, 466 U.S. at 694.

Purcell made an unsuccessful effort to speak to Daniel. Howell was unable to provide contact information for him, and Purcell was told by the prosecutor that Daniel

- 7 -

was unwilling to speak to her. Assuming that, as Howell asserts, it was deficient to "tak[e] the prosecutor's word that the witness [did] not want to talk to defense counsel," Howell again has failed to show prejudice. As the magistrate judge noted, Purcell impeached Daniel in her cross-examination and made a strategic choice to de-emphasize the extent of Howell's relationship with him, given Daniel's connections to both Clonnie and methamphetamine. Howell has not demonstrated what additional information Purcell could have obtained and used to impeach Daniel. And because we conclude that the cumulative result of any assumed deficiency between the investigations of Whorton and Daniel is also insufficient to show prejudice under Strickland, we agree with the district court that Howell is not entitled to relief based on the alleged deficiency in Purcell's pretrial investigation.

**2**

Howell claims that Purcell was confused about which evidence supported Count Two of the indictment and that the magistrate judge's finding to the contrary is not supported by the record. We review this factual finding for clear error. Orange, 447 F.3d at 796.

Count Two of the indictment charged Howell with possessing the drugs found in the trunk of the car when she was arrested on August 25, 2003. The magistrate judge concluded that there was some indication of "confusion about evidence supporting count two." But the record at the evidentiary hearing supports the district court's finding that Purcell understood the underlying factual basis for Count Two of the indictment. Purcell

testified that she explained to Howell that, in Count Two, "the meth that she was charged with was what was in the trunk."  She also testified that a handwritten notation in her records that appeared to evidence confusion only reflected Howell's own misunderstanding.

Howell contends that statements Purcell made while arguing a motion just before closing argument belie the above assertions.  The record, however, is not as clear as Howell suggests.  Purcell began her argument by saying, "[a]s to count two, she was merely a passenger.  There was just, her mere presence is all they showed.  They showed no dominion and control over any of the items."  Purcell began discussing the travel trailer, but the court interrupted her argument to "make sure we're on the same page."  Purcell then said, "I thought that was in Mr. Layman's . . ." but was again interrupted.  Howell asserts that Purcell "stated [a] belief . . . that Count 2 charged the possession of methamphetamine found in Mr. Layman's trailer."  We conclude the trial record is ambiguous and that the district court did not clearly err—particularly in light of Purcell's testimony at the evidentiary hearing—in finding that "Purcell was not confused about the evidence supporting count two."

**3**

Howell's argument that Purcell was constitutionally ineffective in failing to advise her about the plea agreement also fails.  The magistrate judge found that Purcell advised Howell of a plea offer "for a guilty plea to count one of the indictment, dismissal of the remaining counts, and a ten-year prison term, subject to less time if the petitioner

cooperated with the government's ongoing investigation." He further found that "Purcell memorialized her discussion with [Howell] regarding the benefits and disadvantages of entering into the offered plea agreement in a letter." The same letter informed Howell that she could face up to forty-five years in prison if convicted. Howell signed the letter, indicating her "wish to go to jury trial." Purcell testified at the evidentiary hearing that on several occassions she encouraged Howell to take the plea offer.

On appeal, Howell cites her own testimony, claiming that Purcell stated that the plea offer required cooperation Howell could not provide. Howell claims that "the plea decision was anything but clear" for her. The magistrate judge, however, credited Purcell's testimony. Based on the facts as found by the magistrate judge and supported by the documentary record, we conclude that Purcell's advice to Howell about the plea offer did not constitute ineffective assistance.

**B**

Howell's allegation of ineffective assistance of appellate counsel is based on her attorney's failure to file a petition for rehearing ("PFR") following our denial of her direct appeal. The order and judgment disposing of that appeal included a factual error, which Howell contends was the basis for affirmance of her conviction on Count Five of the indictment, possession of a firearm in furtherance of a drug trafficking crime. See 18 U.S.C. § 924(c)(1).

The district court held, and the government argues, that Howell cannot demonstrate that her appellate counsel was constitutionally ineffective because she had

no constitutional right to counsel in seeking rehearing.  Howell responds that 18 U.S.C. § 3006A(c) provides that "[a] person for whom counsel is appointed shall be represented at every stage of the proceedings from his initial appearance . . . through appeal, including ancillary matters appropriate to the proceedings."  At oral argument, in response to a question regarding the "ancillary matters" referenced in the statute, counsel for the government could identify only petitions for rehearing.

We are directed by the government to <u>White v. United States</u>, No. 7:08CR54, 2013 WL 1497579 (W.D. Va. Apr. 11, 2013) (unpublished), which gathers cases concluding that habeas petitioners lack a constitutional right to counsel to pursue a petition for rehearing.  <u>Id.</u> at *4.  Yet several of the cases cited in <u>White</u> arise from petitions filed under 28 U.S.C. § 2254.  Such petitions do not implicate the guarantee in federal law of "represent[ation] at every stage . . . including ancillary matters appropriate to the proceedings."  18 U.S.C. § 3006A(c).

There is also authority to the contrary.  The Seventh Circuit has held that, pursuant to statutes—including § 3006A(c)—and certain rules, "the defendant in a direct criminal appeal has the right to have the continued representation of appointed counsel throughout the course of the appeal, including the filing of post-opinion pleadings in the court of appeals and the filing of a petition for certiorari in the Supreme Court of the United States."  <u>United States v. Howell</u>, 37 F.3d 1207, 1209 (7th Cir. 1994).  In <u>United States v. Coney</u>, 120 F.3d 26 (3d Cir. 1997), the Third Circuit held that "counsel, having appropriately briefed and argued an appeal, is not under an obligation to file a petition for

rehearing or rehearing en banc."  Id. at 27.  But the court held that counsel who believed

a petition for rehearing was "without merit . . . should file a petition for leave to

withdraw, with notice to the appellant that s/he may file a pro se petition for rehearing."

Id. at 28.  If petitions for rehearing are envisioned by the "ancillary" language in

§ 3006A, a conclusion that Howell lacked the right to effective representation at that

stage would nullify the effect of part of the statute.  C.f. Evitts v. Lucey, 469 U.S. 387,

397 (1985) ("[T]he promise . . . that a criminal defendant has a right to counsel . . . would

be a futile gesture unless it comprehended the right to the effective assistance of

counsel.").

We note that the Supreme Court has not held that a statutory right to counsel in

itself establishes a constitutional right to counsel for discretionary appeals.  See

Pennsylvania v. Finley, 481 U.S. 551, 556 (1987) ("But the fact that the defendant has

been afforded assistance of counsel in some form does not end the inquiry for federal

constitutional purposes.  Rather, it is the source of that right to a lawyer's assistance,

combined with the nature of the proceedings, that controls the constitutional question.");

see also Steele v. United States, 518 F.3d 986, 988-89 (8th Cir. 2008) (holding that

circuit's Criminal Justice Act implementation plan arises from "a legislative policy

judgment rather than a constitutional command. . . .  The alleged breach of the provisions

of our plan and [Fed. R. Crim. P.] 44(a) did not deprive Steele of due process of law and

did not give rise to a claim for ineffective representation of counsel").

There is no need to decide the matter, because assuming both that Howell had a

right to effective counsel and that her attorney was deficient in failing to file a PFR, Howell has not demonstrated prejudice under Strickland. We agree that the record of her criminal trial does not support our statement in the order disposing of her direct appeal that Daniel testified "that he gave Howell the shotgun which was later seized inside the travel trailer." Howell, 199 F. App'x at 707. Our assertion that "Daniel Layman's testimony that he gave the shotgun to Howell established a nexus between at least that firearm and Howell" is thus also unsupported. Id. But the existence of a factual error is not by itself sufficient to demonstrate prejudice; Howell must demonstrate that "there is a reasonable probability that . . . the result of the proceedings would have been different" without the error. Strickland, 466 U.S. at 694. "A reasonable probability is a probability sufficient to undermine confidence in the outcome." Id.

On direct appeal, we rejected a sufficiency-of-the-evidence challenge, concluding that "[t]he government's evidence, and the collective inferences that can be drawn from it, was sufficient to sustain Howell's conviction for possession of a firearm in furtherance of a drug trafficking crime." 199 F. App'x at 708. Even assuming that rehearing would have been granted to correct the error, our "confidence in the outcome" of the appeal is not undermined. Sufficiency-of-the-evidence challenges are reviewed de novo, but we must "view[] the evidence and the reasonable inferences to be drawn therefrom in the light most favorable to the government. We will reverse only if no rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." United States v. Grassie, 237 F.3d 1199, 1207 (10th Cir. 2001) (quotation omitted). In order to

- 13 -

obtain a conviction for possessing a firearm during and in relation to a drug trafficking crime under 18 U.S.C. § 924(c)(1), the government must show "(1) that the defendant possessed a firearm and (2) that the possession was in furtherance of a drug trafficking offense or crime of violence." United States v. Avery, 295 F.3d 1158, 1172 (10th Cir. 2002) (quotation omitted). "Possession under § 924(c)(1) can be shown through either constructive or actual possession." United States v. Lott, 310 F.3d 1231, 1247 (10th Cir. 2002). When premises are jointly occupied, "the government is required to present direct or circumstantial evidence to show some connection or nexus individually linking the defendant to the contraband." United States v. Lopez, 372 F.3d 1207, 1212 n.4 (10th Cir. 2004) (quotation omitted).

We cannot conclude that "no rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." Grassie, 237 F.3d at 1207. On August 25, 2003, Howell was arrested with Clonnie on her way to the property at 9:30 at night. She and Clonnie were the only non-law enforcement individuals in the immediate vicinity of the property at the time, and there was testimony that she had been present at the property within the previous several days. At that time, Daniel testified, Clonnie told Howell to allow Daniel onto the property, which we previously concluded "indicat[ed] she exerted some control over access to the area." Id. at 707.

Women's clothing and hygiene items were found in the trailer, in addition to evidence that Clonnie was occupying the space. There was additional evidence from which the jury could reasonably have concluded that Clonnie and Howell had a close

- 14 -

relationship—for instance, he supplied her with cars, kept mail and his medicine at her home, at least once paid the rent on her home at a trailer park, and was called "Uncle Clonnie" by her daughter. A reasonable jury could have concluded based on the presence of the clothing and hygiene products that Howell regularly occupied the trailer.

Moreover, materials indicative of methamphetamine manufacturing were recovered in same area as the women's clothing. The government also located several firearms in the trailer. Based on the close physical proximity between the women's clothing, the weapons, and the drug paraphernalia, a reasonable jury could have concluded that Howell possessed the weapons in the trailer in furtherance of a drug trafficking crime. See United States v. Hall, 20 F.3d 1084, 1089 (10th Cir. 1994) ("We have upheld convictions under section 924(c)(1) where the evidence established a physical proximity between the firearm and the defendant, or the firearm and the drugs.").

We acknowledge, as did the district court, that the government's evidence supporting Count Five was hardly overwhelming. In denying Howell's motion for acquittal under Fed. R. Crim. P. 29, the court said, "counts three, four, and five are really close," but denied "the motion with regard to count five because there are inferences there, and those factors could establish possession in furtherance of a drug trafficking crime." We agree with the district court's analysis that the issue was close, but we cannot conclude that there was a reasonable probability that Howell's conviction would have been reversed had our attention been called to the factual error in the prior order and

judgment.  Having reviewed the record, we hold that a "rational trier of fact could have found the essential elements" of possession of a weapon in furtherance of a drug trafficking crime "beyond a reasonable doubt" based on the direct and circumstantial evidence presented by the government.  <u>Grassie</u>, 237 F.3d at 1207.  Therefore, even assuming that Howell was entitled to effective assistance of counsel in filing a PFR and that her attorney was deficient, she cannot demonstrate the prejudice required by <u>Strickland</u>.

### III

The judgment of the district court is **AFFIRMED**.

Entered for the Court

Carlos F. Lucero
Circuit Judge